# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH WAYNE SEKERKE,<br>Booking No. 18165284,<br><br>Plaintiff,<br><br>vs.<br><br>ARTURO LEO; MARK O'BRIEN;<br>SHERIFF WILLIAM GORE,<br><br>Defendants. | Case No.: 3:19-cv-0034-GPC-RBB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO FILE SECOND AMENDED COMPLAINT [ECF No. 35];**<br><br>**ORDER GRANTING MOTION TO QUASH [ECF No. 45];**<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND EMERGENCY INJUNCTION [ECF No. 47].** |

Before the Court is Plaintiff's motion for leave to file a Second Amended Complaint ("SAC"). ECF No. 35. Defendant Sheriff William Gore ("Gore") filed an opposition on January 2, 2020. ECF No. 42.[1]

---

[1] The Court issued a briefing schedule on November 27, 2019 noting that no reply would be permitted. Plaintiff filed a reply on January 13, 2020. ECF No. 49

1

Additionally, before the Court are Specially Appearing Individuals Motion to Quash Service and Dismiss, ECF No. 45, and Plaintiff's motion for a temporary restraining order ("TRO") and emergency injunction, ECF No. 47. Defendant Gore filed an opposition to Plaintiff's motion for a TRO and emergency injunction on January 14, 2020. ECF No. 50. Plaintiff filed a reply. ECF No. 52.

The Court hereby **GRANTS in part and DENIES in part** Plaintiff's motion for leave to file a SAC; **GRANTS** the motion to quash; and **DENIES** motion for a TRO and emergency injunction.

## I. Procedural Background

On January 7, 2019, Plaintiff proceeding *pro se* and *in forma pauperis*, filed this lawsuit. ECF No. 1. Plaintiff currently resides in San Diego County Jail. On February 25, 2019, Plaintiff filed a First Amended Complaint ("FAC") bringing claims under 42 U.S.C. § 1983, with supplemental state tort claims, against Arturo Leon (sued as "Arturo Leo"), medical officer deputy Mark O'Brien ("Deputy O'Brien"), and Sheriff William Gore. ECF No. 7 ("FAC"). In the FAC, Plaintiff argued that his right to medical care had been violated due to Defendants' policy of refusing to provide narcotics to inmates. *Id.*

On August 14, 2019, Plaintiff filed a motion to join defendants Medical Administrator Barbara Lee, Deputy Olsen, Sergeant A. Sevilla, and Lieutenant Laura Coyne. ECF No. 21. On September 9, 2019, Plaintiff filed a motion for joinder of new claims and therein only named as defendants, Arturo Leon, Mark O'Brien, and Barbara Lee. ECF No. 26. On October 9, 2019, Plaintiff also filed an Ex Parte Notice of Retaliation and Request for Duplicate Orders requesting, *inter alia*, duplicate copies of all filings and court orders since July 2019. On October 11, 2019, the Court granted Plaintiff's request for copies, denied Plaintiff's motions for joiner of new claims and new defendants, and directed Plaintiff to file a motion for leave to file a second amended complaint if he wished to add defendants and claims to this case. ECF No. 30. On November 27, 2019, Plaintiff filed a motion for leave to file a Second Amended

Complaint ("SAC"). ECF No. 35.

In the FAC, Plaintiff asserted that he suffers from health conditions requiring pain medications, and alleged that defendants Arturo Leon (sued as "Arturo Leo"), Mark O'Brien, and William Gore violated his right to adequate medical care by complying with San Diego County Jail's policy of refusing to provide narcotics to inmates ("no narcotic policy"). FAC at 3, 4.

In the SAC, Plaintiff names as defendants Arturo Leon ("Dr. Leon") and Mark O'Brien ("Dr. O'Brien"), and seeks to add as new defendants, Jon Montgomery ("Dr. Montgomery") and Dane Olsen ("Deputy Olsen"). Plaintiff does not name William Gore as a defendant.

## II. Factual Background

Plaintiff arrived at San Diego County Jail on October 11, 2018. Plaintiff alleges that all Defendants are practicing a blanket policy of "no narcotic pain medication in violation of the Eighth Amendment." SAC at 3.[2] Plaintiff alleges that, after his arrival, Plaintiff's pharmacy faxed Plaintiff's prescriptions to the jail but Plaintiff was never provided with his prescription medication. *Id.* at 9. Plaintiff argues that there is "no penological purpose" for this policy and that "[s]uch a blanket policy is unconstitutional." *Id.* at 4. Plaintiff also alleges medical negligence and malpractice claims under the California Government Tort Claims Act, due to the increase in his blood pressure as a result of the "severe pain" and Dr. Leon's denial of morphine. *Id.* at 4, 5.

### a. October through November 2018

In the SAC, Plaintiff alleges that he was denied medical care between October and November of 2018 based on the following allegations: (1) Plaintiff developed MRSA[3] infection within a day of arriving to jail facility; and (2) Plaintiff has been denied

---

[2] Due to the inconsistent paragraph numbering, the Court refers to the ECF pagination for the SAC.
[3] The Merriam-Webster online dictionary defines "MRSA" to mean "methicillin-resistant Staphylococcus aureus." Merriam-Webster, https://www.merriam-webster.com/dictionary/MRSA (last visited Feb. 5, 2020).

prescription medication to manage the pain related to his opioid withdrawals.

Plaintiff alleges that as a result of the denial of the prescription medication, he has "suffered severely"; his "sleep is denied"; and "often times can't even focus on reading a book due to the pain." *Id.* Plaintiff states that his "[d]aily activities such as putting on clothes, cleaning, and showering can not be done without suffering through severe pain" and that his "blood pressure has dramatically increased." *Id.* Plaintiff also alleges that he suffers from cervical and spinal stenosis, degenerative disk disease, scoliosis, and severe pain and inflammation in his thoracic spine. *Id.* at 4, 5.

### *Dr. Leon*

With respect to Dr. Leon, Plaintiff brings a denial of medical care claim based on his allegation that Dr. Leon failed to provide Plaintiff with any treatment for the MRSA infection and as a result, Plaintiff's infection worsened for three months until November 30, 2018 when a judge ordered Plaintiff to be seen by a medical professional. *Id.* at 6. Plaintiff alleges that due to Dr. Leon's failure to provide treatment, Plaintiff has sustained a permanent black scar on his ankle and permanent feelings of a "numb-like sensation to the touch that sends a minor painful sensation to the foot." SAC at 6.

Plaintiff also brings a personal injury claim against Dr. Leon for refusing to taper Plaintiff off of his opioid pain management medications, since, as a result, Plaintiff suffered from extreme withdrawal systems and on November 5, 2018, Plaintiff collapsed and hit his head on a steel door. *Id.* at 9. Paramedics were called and Plaintiff was sent by ambulance to the UCSD hospital. *Id.* Plaintiff further alleges that his medication, Lyrica, warns users to "[a]void abrupt withdrawal. Gradually taper over 1 week." Plaintiff further alleges that his morphine medication also warns against abrupt withdrawal. *Id.* at 9.

Plaintiff also brings a medical malpractice claim under the California Tort Claims Act based on an October 13, 2018 appointment with Dr. Leon. Plaintiff alleges that Dr. Leon refused to taper Plaintiff off his prescribed opioid pain management medication, and instead prescribed nonsteroidal anti-inflammatory drug ("NSAID") medication which

Plaintiff alleges subjected Plaintiff's liver and kidneys to unnecessary risk of harm. *Id.* at 8.

### *Dr. Montgomery and Deputy O'Brien*

Plaintiff alleges that Dr. Montgomery is responsible for the jail's policies and has instructed jail physicians to deny pain medication for inmates. *Id.* at 7. Specifically, Plaintiff alleges that Dr. Montgomery has ordered Plaintiff's physician, Dr. Peter Freedland, to deny Plaintiff narcotic pain medication, including morphine, and MRI examinations. *Id.* Plaintiff alleges that Dr. O'Brien has also continued to deny treatments ordered by the jail physician. *Id.*

### *Deputy Olsen*

Plaintiff alleges a retaliation claim against Deputy Olsen, claiming that Deputy Olsen placed Plaintiff in administrative segregation one week after Plaintiff filed the original complaint in this Court. SAC at 10. Plaintiff alleges this was retaliatory and fabricated accusations to hold Plaintiff in administrative segregation since Plaintiff had not violated any rule meriting this treatment. SAC at 10.

### *San Diego County*

Plaintiff alleges that County of San Diego is liable since all other Defendants were acting as agents, employees, or co-conspirators of the County. SAC at 11.

## III. Motion to Quash

Dr. Montgomery and Deputy Olsen argue that this Court should quash service as to them. Plaintiff does not oppose.

Due to clerical error, Plaintiff's motion for leave to file a SAC was processed as a standalone Second Amended Complaint.[4] On December 10, 2019, the Court corrected this error, noting that a summons was inadvertently issued and that Plaintiff was not required to complete service of his motion. ECF No. 37. However, on December 20,

---

[4] In Plaintiff's filing, the SAC preceded the motion for leave to file the SAC. The motion was included as last page of the document.

2019, the U.S. Marshals personally served Dr. Montgomery with a copy of Plaintiff's motion and Deputy Olsen received the same documents in his workplace mail on December 19, 2019. ECF No. 45-1 at 3.

The temporary issuance of the defective summons was withdrawn by this Court prior to the service of said defective summons on Dr. Montgomery and Deputy Olsen, thereby rendering the service invalid. Accordingly, the motion to quash the service of the defective summons on both Deputy Olsen and Dr. Montgomery is **GRANTED**.

## IV. Motion for Leave to File a Second Amended Complaint

Defendant argues that Plaintiff's motion for leave to file a SAC should be denied as to the previously-unnamed individual defendants, Deputy Olsen and Dr. Montgomery, since the claims against them are outside the scope of the present suit. Plaintiff opposes.

### a. Legal Standard

Under Federal Rule of Civil Procedure ("Rule") 15(a), leave to amend a complaint after a responsive pleading has been filed may be allowed by leave of the court and "shall freely be given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962); Fed. R. Civ. P. 15(a). Granting leave to amend rests in the sound discretion of the trial court. *Int'l Ass'n of Machinists & Aerospace Workers v. Republic Airlines*, 761 F.2d 1386, 1390 (9th Cir. 1985). The "rule favoring liberality in amendments to pleadings is particularly important for the pro se litigant." *Lopez v. Smith,* 203 F.3d 1122, 1131 (9th Cir. 2000) (internal quotation marks omitted).

Because Rule 15(a) favors a liberal policy, the nonmoving party bears the burden of demonstrating why leave to amend should not be granted. *Genentech, Inc. v. Abbott Labs.*, 127 F.R.D. 529, 530-31 (N.D. Cal. 1989). In assessing the propriety of an amendment, courts consider several factors: (1) undue delay, (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by amendments previously permitted; (4) prejudice to the opposing party; and (5) futility of amendment. *Foman*, 371 U.S. at 182; *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). These factors are not equally weighted; the possibility of delay alone, for instance, cannot

6

justify denial of leave to amend, *DCD Programs*, 833 F.2d at 186, but when combined with a showing of prejudice, bad faith, or futility of amendment, leave to amend will likely be denied. *Bowles v. Reade*, 198 F.2d 752, 758 (9th Cir. 1999). "Futility alone can justify the denial of a motion for leave to amend." *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004).

### b. Supplemental State Law Medical Malpractice Claims

Plaintiff alleges medical malpractice claims under the California Tort Claims Act against Dr. Arturo Leon on the basis that Dr. Leon refused to taper Plaintiff off his prescribed opioid pain medication and prescribed medication in contradiction with Plaintiff's gastrointestinal reflux disease.

"It is . . . clear that section 1915(e) not only permits but requires a district court to [sua sponte] dismiss an in forma pauperis complaint" at any time if the court determines that it fails to state a claim. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citing 28 U.S.C. § 1915(e)(2)(B)(ii); *see also Chavez v. Robinson*, 817 F.3d 1162, 1167 (9th Cir. 2016) ("The statute governing IFP filings requires a court to dismiss an action 'at any time' if it determines that the complaint 'seeks monetary relief against a defendant who is immune from such relief.'") (citing 28 U.S.C. § 1915(e)(2)(B)(iii)), and even "before the defendants have been served and affirmatively raised the issue in a responsive pleading."). "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir., 2012); *Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007) (noting that "the sua sponte screening and dismissal procedure is cumulative of … any … Rule 12(b)(6) motion that [a defendant] may choose to bring.").

Before commencing a lawsuit against a California state or local public entity or its employee based on tort liability or for any claim for money or damages, the California Tort Claims Act requires a plaintiff to first present a written claim to the public entity. *See Gong v. City of Rosemead*, 226 Cal. App. 4th 363, 374 (2014); *see also City of*

*Stockton v. Superior Court*, 42 Cal. 4th 730, 738 (2007). Claims for personal injury and property damages must be presented within six months after accrual; all other claims must be presented within one year. *City of Stockton*, 42 Cal. 4th at 738. A plaintiff cannot file a lawsuit until the written claim has been acted upon, or deemed rejected, by the board of the public entity. *State of California v. Superior Court (Bodde)*, 32 Cal. 4th 1234, 1239 (2004). "[S]ubmission of a claim to a public entity pursuant to [the California Tort Claims Act] 'is a condition precedent to a tort action and the failure to present the claim bars the action.' " *Id.* at 1240 (quoting *Phillips v. Desert Hosp. Dist.*, 49 Cal. 3d 699, 708 (1989)); *see also Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988) (holding that supplemental state law tort claims alleged in a § 1983 suit against both the individual and public entity defendants may be dismissed if the plaintiff "fails to allege compliance with California tort claims procedures" before filing suit).

"A cause of action that is subject to the statutory claim procedure must allege either that the plaintiff complied with the claims presentation requirement, or that a recognized exception or excuse for noncompliance exists." *Gong*, 226 Cal. App. 4th at 374; *see also Bodde*, 32 Cal. 4th at 1243 ("[A] plaintiff must allege facts demonstrating or excusing compliance with the claim presentation requirement. Otherwise, his complaint is subject to a general demurrer for failure to state facts sufficient to constitute a cause of action."); *accord Carter v. Gastelo*, 2019 WL 7194558, at *8 (C.D. Cal. Dec. 23, 2019); *Jackson v. City of San Diego*, 2019 WL 3306296, at *5 (S.D. Cal. July 23, 2019). California courts have applied this exhaustion requirement to claims of denial of timely medical care. *See Wright v. State of California*, 122 Cal. App. 4th 659, 664 (2004). "The exhaustion of administrative remedies requirement furthers several important societal and governmental interests" including "bolstering administrative autonomy, mitigating damages, giving agencies opportunity to make factual findings, encouraging settlement, filtering out frivolous claims, fostering better prepared litigation, and promoting judicial economy." *Id.* at 666.

Here, state law provides an administrative remedy. However, in the SAC, Plaintiff fails to allege that he submitted his medical care claim to the administrative process provided by the San Diego County Sheriff's Department thereby exhausting the requisite administrative grievance procedure requirements prior to filing this action. "It is well settled as a general proposition that a litigant will not be afforded relief in the courts unless and until he has exhausted available administrative remedies." *In re Muszalski*, 52 Cal. App. 3d 500, 503 (Ct. App. 1975). Plaintiff has failed to allege his compliance with California tort claims procedures requiring exhaustion of administrative remedies, and therefore Plaintiff is **DENIED** leave to amend his complaint to include his claim for state supplemental medical malpractice ("Count 4").

### c. Retaliation Claim Against Deputy Dane Olsen

With respect to Deputy Olsen, Plaintiff alleges a retaliation claim. Plaintiff alleges that Deputy Olsen came to Plaintiff's cell on July 7, 2019 with five other deputies and placed Plaintiff in administrative segregation. ECF No. 35 at 10. Plaintiff alleges this was retaliatory; that Deputy Olsen fabricated accusations to hold Plaintiff in administrative segregation since Plaintiff had not violated any rule meriting this treatment; and that he was placed in administrative segregation "about one week" following the service of Plaintiff's original complaint.[5] SAC at 10. Defendant counters Plaintiff's retaliation claim should not be permitted because (1) Plaintiff fails to allege a retaliation claim – specifically by failing to allege that Defendant's actions did not advance legitimate goals of the correctional institution, and (2) the decision to move Plaintiff to administrative segregation in July 2019 is distinct from the issues raised in the FAC and should therefore be dismissed under Rule 15(d) as a separate, distinct and new cause of action.

Of fundamental import to prisoners are their First Amendment "right[s] to file

---

[5] The summonses for the FAC were returned executed on June 24, 2019, June 26, 2019, and July 3, 2019. See ECF Nos. 10, 11, 12.

prison grievances," *Bruce v. Ylst,* 351 F.3d 1283, 1288 (9th Cir. 2003), and to "pursue civil rights litigation in the courts." *Schroeder v. McDonald,* 55 F.3d 454, 461 (9th Cir. 1995). Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Id*. at 567-68.

Challenges to restrictions of first amendment rights must be analyzed in terms of the legitimate policies and goals of the correctional institution in the preservation of internal order and discipline, maintenance of institutional security, and rehabilitation of prisoners. *See Storseth v. Spellman,* 654 F.2d 1349 (9th Cir. 1981). "However, the limitation must be no greater than is necessary to protect the particular governmental interest involved." *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985). For Plaintiff to state a cause of action, "he must do more than allege retaliation because of the exercise of his first amendment rights in bringing and assisting in civil rights litigation; he must also allege that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." *Id.*

Here, Plaintiff alleges that Olsen's actions were retaliatory since Olsen and other prison officials were motivated by Plaintiff's filing of the FAC. Defendant argues that there were legitimate grounds for Plaintiff's placement in administrative segregation and points to Plaintiff's prior pleading describing other inmates' complaints about Plaintiff causing problems with respect to the housing situation. ECF No. 21 at 8. Plaintiff argues that these were "fabricated accusations" and merely served as pretext for Defendant's retaliatory actions. ECF No. 35 at 10. Further, Plaintiff alleges that the decision to place him in administrative segregation immediately followed his decision to file pleadings in this Court. *See Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) ("Because direct

10

3:19-cv-0034-GPC-RBB

evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal"); *Pratt v. Rowland*, 65 F.3d 802, 808 ("[T]iming can properly be considered as circumstantial evidence of retaliatory intent[.]").

At this stage, Plaintiff has sufficiently alleged a retaliation claim and is therefore permitted to amend his pleading to include this claim. *See e.g., Watison*, 668 F.3d at 1115 (9th Cir. 2012) (plaintiff sufficiently alleged retaliation where he alleged that prison officials placed him in administrative segregation after plaintiff filed a grievance against officials); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985) (overturning lower court's summary dismissal of retaliation claim where plaintiff claimed that prison authorities' actions were "arbitrary and capricious").

Defendant argues that the retaliation claim against Deputy Olsen should be denied under Rule 20 since the claim does not arise out of the same "transaction, occurrence, or series of transactions or occurrences" as the FAC, or alternatively, denied under Rule 15 as a supplemental pleading that introduces a "separate, distinct and new cause of action." However, Plaintiff alleges retaliation for filing the present lawsuit and therefore, the claim does not qualify as a "separate, distinct and new cause of action." *See e.g.*, *Watison*, 668 F.3d 1108 (considering plaintiff's Eighth Amendment claims alongside plaintiff's First Amendment retaliation claims and holding that plaintiff should be permitted to amend his retaliation claims). Therefore, Plaintiff is **GRANTED** leave to amend his complaint to include "Count 6" for retaliation.

### d. Violation of Right to Medical Care Claim Against Dr. Montgomery

Plaintiff brings a claim of violation of right to medical care against Dr. Montgomery on the basis that he is the current Medical Director of the San Diego County Jail and is therefore responsible for instructing jail physicians to uphold the "no narcotic" policy; Plaintiff also specifically alleges that Dr. Montgomery denied the pain

management treatment prescribed by non-party jail physician Dr. Peter Freedland.[6] Defendant counters that Dr. Olsen is an improper defendant since Dr. Olsen was not an employee of the San Diego County Jail between October through November 2018, and additionally, Plaintiff's claims are futile.

"Inmates who sue prison officials for injuries suffered while in custody may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause, or if not yet convicted, under the Fourteenth Amendment's Due Process Clause." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1067-68 (9th Cir. 2016) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). "Under both clauses, the plaintiff must show that the . . . officials acted with 'deliberate indifference.'" *Id.* at 1068*; see also Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018) (inadequate medical care claims alleged by persons in pretrial custody "must be evaluated under an objective deliberate indifference standard") (citing *Castro*, 833 F.3d at 1070).

"[T]he elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." *Gordon*, 888 F.3d at 1125 (9th Cir. 2018).  With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily

---

[6] Plaintiff additionally alleges that Dr. Montgomery denied MRI treatments prescribed by Dr. Freedland. This claim regarding medical care is unrelated to the alleged "no narcotic" policy and denial of opioid withdrawal pain management medication.  The provision of MRI examinations does not arise from the same facts or events that give rise to this action.  Plaintiff is therefore **DENIED** leave to amend the complaint to include claims related to the provision of MRI examinations.

'turn[ ] on the facts and circumstances of each particular case.' " *Id*. at 1071. (citations omitted). The " 'mere lack of due care by a state official' does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Id*. (citations omitted). Thus, the plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id*.

Here, Plaintiff alleges that Dr. Montgomery has continued to enforce the "no narcotic" policy, which Plaintiff alleges constitutes a denial of Plaintiff's right to medical care. The enforcement of this policy shares the same underlying facts as the alleged denial of medical care that gives rise to Plaintiff's action. In other words, in order to ascertain whether Dr. Montgomery's denial of opioid withdrawal pain management medication constituted a denial of Plaintiff's right to medical care, this Court would need to engage in the same factual analysis as required by Plaintiff's other claims against the other defendants in this action – *i.e.*, Dr. Leon, Deputy O'Brien, and San Diego County. Rule 20 states that Defendants may be joined in one action if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action." *See* Rule 20(a)(2)(A-B). Accordingly, to the extent that Plaintiff seeks injunctive relief against Dr. Montgomery to prevent the continued enforcement of the "no narcotic" policy, Plaintiff is permitted to amend his complaint to include this claim.[7]

### e. Conclusion

In sum, for the reasons outlined above, Plaintiff is permitted to amend the complaint to allege only the following claims: the individualized inadequate medical

---

[7] Plaintiff includes damages in his request for relief but does not specify as to which defendant. To the extent that Plaintiff seeks damages against Dr. Montgomery, Plaintiff will not be permitted to recover since Plaintiff has not alleged that Dr. Montgomery was involved in the provision of medical care between October and November 2018. Plaintiff is limited to seeking injunctive relief against Dr. Montgomery.

treatment against the Dr. Leon and Deputy O'Brien between October and November 2018; the individualized claim against Montgomery for his enforcement of the "no narcotic" policy; the personal injury claim against Dr. Leon; and the related claim against San Diego County on the grounds that each defendant was acting within the scope of agency, employment or conspiracy of San Diego County.

Accordingly, Plaintiff's motion for leave to file a second amended complaint as to Counts 1, 2, 3, 5, 6, and 7, subject to the limitations described above, is **GRANTED.**

The **Clerk of Court is HEREBY ORDERED** to file the SAC (ECF No. 35 at 1-16) as the new operative complaint. Within **90 days** of the date of this order, the Clerk is ordered to issue a new summons as to the SAC upon the County of San Diego, Sherriff Deputy Dane Olsen, and Doctor Jon Montgomery.[8]

## V. Motion for Temporary Restraining Order and Emergency Injunction

Plaintiff seeks a temporary restraining order and emergency injunction in order to obtain a magnetic resonance imaging ("MRI") scan, which Plaintiff alleges was recommended by a physician on a November 20, 2019 due to Plaintiff's hydrocephalus condition. Defendant opposes on the bases that (1) Plaintiff's factual assertions are unsupported and (2) Plaintiff's motion fails to meet the threshold requirement for relatedness to the present action.

### a. Background

Plaintiff signed his motion for a temporary restraining order and emergency injunction on January 2, 2020 and filed it on January 9, 2020. ECF No. 47. In the motion, Plaintiff alleges that on November 20, 2019, he was taken to the University of California San Diego ("UCSD") Neurology Department to see a physician who diagnosed Plaintiff with hydrocephalus. ECF No. 47 at 1. Plaintiff also alleges that the physician also told him that Plaintiff should undergo an MRI scan, that it was a

---

[8] Plaintiff does not name Sheriff William Gore in the SAC, and therefore all claims against him are waived.

14

3:19-cv-0034-GPC-RBB

"borderline emergency," and that Plaintiff would be scheduled for an MRI scan in two weeks. *Id.* In his motion, Plaintiff describes his symptoms as having headaches, "sometimes seeing black and yellow spots in my vision," and that almost everyday he experiences a sensation of feeling like "the entire building is on a boat where I feel like I am rocking back and forth." *Id.* at 2. Plaintiff states, "It makes me feel I am going to fall over. It is scary." *Id.* Plaintiff requests that he be taken immediately to UCSD for an MRI scan of his brain and neck and "any further treatment following the results of the MRI ordered by UCSD physicians." *Id.* at 1.

On January 14, 2020, Sheriff Gore submitted an opposition, ECF No. 50, along with a declaration from Liza Macatula, the nursing supervisor for the County of San Diego (Declaration of Liza Macatula, ECF No. 50-1, "Macatula Decl."), and exhibits of Plaintiff's health and medical records. ECF No. 50-1. These records show that at Plaintiff's November 20, 2019 medical visit, the physician diagnosed Plaintiff with hydrocephalus based on Plaintiff's symptoms, which were described as "[s]ensation of intermittent rocking sensation . . . [n]o vertigo . . ringing 'like water in my ears.'" ECF No. 50-1 at 7, 9. The physician did not recommend an MRI, but did recommend (1) a follow-up hydrocephalus visit at the neurosurgery clinic, and (2) medication trial of 250 mg of acetazolamide, which controls symptoms associated with altitude sickness and fluid accumulation. Macatula Decl. ¶¶ 17-18. Both recommendations have been addressed: Plaintiff has been offered the acetazolamide medication twice daily since December 21, 2019 and has refused medication on eight occasions. *Id.* ¶ 18, Ex. B. Plaintiff is also scheduled for a follow-up visit at the neurosurgery clinic at UCSD for February 28, 2020. Macatula Decl. ¶ 19.

Plaintiff also saw a physician on January 13, 2020 in response to Plaintiff's complaints about acetazolamide leaving a "metallic taste" in his mouth, and neck pain. *Id.*; Exhibit C. At this visit, Plaintiff noted that he wanted morphine. ECF No. 50-1 at 23. The physician wrote that Plaintiff denied any headache, noting "negative headache, dizziness." ECF No. 50-1 at 24. After learning about Plainitff's symptoms of headaches,

15

3:19-cv-0034-GPC-RBB

seeing black and yellow spots in his vision, and vertigo-type symptoms, Macatula informed the medical staff at the San Diego County Jail. *Id.* ¶¶ 22, 23.

### b. Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Resources Def. Council*, 555 U.S. 7, 24 (2008). "In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id*. (citing *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987) (internal citations omitted) ). As such, the "grant of a preliminary injunction is a matter committed to the discretion of the trial judge[.]" *Evans v. Shoshone–Bannock Land Use Policy Comm'n*, 736 F.3d 1298, 1307 (9th Cir. 2013). This discretion allows courts to properly evaluate when it is appropriate to grant preliminary relief in light of the "infinite variety of situations which may confront it." *A.L.K. Corp. v. Columbia Pictures Indus., Inc*., 440 F.2d 761, 763 (3d Cir. 1971). District courts exercise this discretion according to a four-factor test mandated by traditional principles of equity. *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006). The test requires a plaintiff to demonstrate (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in the plaintiff's favor, and (4) that an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

In performing this analysis, district courts must consider whether the nature of the relief sought in the motion is sufficiently related to the claims that give rise to the action. "The Ninth Circuit has formally adopted the rule . . . which requires a sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself." *Hansen v. Cty. of San Diego*, 2018 WL 3584461, at *2 (S.D. Cal. July 26, 2018). As such, "[t]here must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint for a court to grant a motion for injunctive relief; this requires a sufficient

16

3:19-cv-0034-GPC-RBB

nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015). The relationship between the preliminary injunction and the underlying complaint must be "sufficiently strong where the preliminary injunction would grant relief of the same character as that which may be granted finally." *Id.* (citations omitted). "Absent that relationship or nexus, the district court lacks authority to grant the relief requested." *Id.*

   **c. Discussion**

Here, Plaintiff has based his motion for a TRO and emergency injunction on events that are outside of the scope of the events that give rise to this action – *i.e.*, the October-November 2018 provision of medical care and the "no narcotic" policy. The relief he seeks in his complaint – i.e., the provision of narcotic pain management medication and damages – is separate and apart from the relief he seeks in this motion. Plaintiff has failed to sufficiently establish a nexus between the allegations that give rise to his motion and the allegations in the underlying complaint. *See e.g., Davis v. Paramo*, 2016 WL 5682550, (S.D. Cal. Oct. 3, 2016) (rejecting plaintiff's medical care claims that arose from events that occurred after the plaintiff filed his complaint). In order to adjudicate Plaintiff's allegations regarding Defendants' provision – or lack thereof – of medical care related to Plaintiff's hydrocephalus condition and MRI scans, the Court would be required to engage in a factual analysis distinct from the analysis required by the claims in the SAC. This action is limited to Plaintiff's claims arising out of the medical care he received between October and November 2018 and the related enforcement of the "no narcotic" policy. The Court therefore lacks the authority to grant the relief requested. On this basis, Plaintiff's motion is **DENIED**.

Further, Plaintiff's request appears to be moot since he has been provided medical care following his November 20, 2019 appointment and has a follow-up neurosurgery visit scheduled. On January 13, 2020, Plaintiff had a follow-up assessment in response to his complaints about the acetazolamide medication and neck pain. ECF No. 50-1 at 23.

At this visit, the Physician noted that Plaintiff was not experiencing any medical emergency related to hydrocephalus and that Plaintiff wanted morphine medication. *Id.* Plaintiff is scheduled for a follow-up neurosurgery visit at UCSD on February 28, 2020. Macatula Decl. ¶ 19.

In Plaintiff's Reply (ECF No. 52), Plaintiff requests a copy of all his medical records. Plaintiff's request is **DENIED**.[9] Aside from being overbroad, Plaintiff is required to follow all applicable discovery rules in seeking document production by the Defendants and has failed to establish his entitlement to such documentation.

**IT IS SO ORDERED**.

Dated: February 10, 2020

Hon. Gonzalo P. Curiel
United States District Judge

---

[9] Plaintiff also references a prior request for records. The Court has previously granted Plaintiff's prior request for copies of pleadings and orders. ECF No. 30.