1

2

3

4

5

6

7

8               **UNITED STATES DISTRICT COURT**

9             **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   KEITH WAYNE SEKERKE,                   Case No.:  3:19-cv-0034-GPC-RBB
     Booking No. 18165284,
12                                          **ORDER GRANTING IN PART AND**
13                           Plaintiff,     **DENYING IN PART DEFENDANTS'**
                                            **MOTION TO DISMISS PORTIONS**
14              vs.                         **OF PLAINTIFF'S SECOND**
                                            **AMENDED COMPLAINT AND**
15                                          **VACATING HEARING**
     ARTURO LEON; MARK O'BRIEN;
16   JON MONTGOMERY; DANE OLSEN             **[ECF No. 58]**
     and COUNTY OF SAN DIEGO,
17
                             Defendants.
18

19

20       Before the Court is Defendants Arturo Leon and Mark O'Brien's motion to dismiss

21   Plaintiff's First, Second, Third, and Fifth claims for relief in the Second Amended

22   Complaint (ECF No. 54, "SAC").  ECF No. 58.  Plaintiff filed an opposition on March

23   25, 2020.  ECF No. 65.  Defendants filed a reply on March 31, 2020.  ECF No. 66.

24       The Court hereby **GRANTS in part and DENIES in part** Defendants' motion

25   and **VACATES** the hearing on the motion that was scheduled for April 17, 2020.

26   **I.    Procedural Background**

27       On January 7, 2019, Plaintiff proceeding *pro se* and *in forma pauperis*, filed this

28   lawsuit.  ECF No. 1.  Plaintiff currently resides in San Diego County Jail.  On February

1

1 | 25, 2019, Plaintiff filed a First Amended Complaint ("FAC") bringing claims under 42

2 | U.S.C. § 1983, with supplemental state tort claims, against Arturo Leon (sued as "Arturo

3 | Leo"), Mark O'Brien ("O'Brien"), and Sheriff William Gore.  ECF No. 7 ("FAC").  In

4 | the FAC, Plaintiff argued that his right to medical care had been violated due to

5 | Defendants' policy of refusing to provide narcotics to inmates.  *Id.*

6 |    On August 14, 2019, Plaintiff filed a motion to join defendants Medical

7 | Administrator Barbara Lee, Deputy Olsen, Sergeant A. Sevilla, and Lieutenant Laura

8 | Coyne.  ECF No. 21.  On September 9, 2019, Plaintiff filed a motion for joinder of new

9 | claims and therein only named as defendants, Arturo Leon, Mark O'Brien, and Barbara

10 | Lee.  ECF No. 26.  On October 9, 2019, Plaintiff also filed an Ex Parte Notice of

11 | Retaliation and Request for Duplicate Orders requesting, *inter alia*, duplicate copies of all

12 | filings and court orders since July 2019.  On October 11, 2019, the Court granted

13 | Plaintiff's request for copies, denied Plaintiff's motions for joinder of new claims and

14 | new defendants, and directed Plaintiff to file a motion for leave to file a second amended

15 | complaint if he wished to add defendants and claims to this case.  ECF No. 30.

16 |    On November 27, 2019, Plaintiff filed a motion for leave to file a Second

17 | Amended Complaint ("SAC").  ECF No. 35. The SAC named Dr. Arturo Leon ("Dr.

18 | Leon") and Dr. Mark O'Brien ("Dr. O'Brien"), as defendants and sought to add as new

19 | defendants, Jon Montgomery ("Montgomery") and Dane Olsen ("Deputy Olsen").  The

20 | SAC alleged seven causes of action as follows: (1)  Inadequate medical care against Drs.

21 | Leon and O'Brien; (2) Inadequate medical care – MRSA Infection (failure to provide

22 | treatment) against Dr. Leon; (3) Inadequate medical care – Denying Prescription against

23 | Drs. Montgomery and O'Brien; (4) State Supplemental Medical Claims against Dr. Leon;

24 | (5) Personal Injury against Dr. Leon; (6) Retaliation against Deputy Olsen; and (7)

25 | Liability of San Diego County based on all other Defendants being agents, employees, or

26 | co-conspirators.

27 |    Due to a clerical error, the motion seeking permission to file a SAC was initially

28 | processed by the Court as a filed SAC and summonses were issued.  ECF No. 35.  On

3:19-cv-0034-GPC-RBB

1   December 10, 2019, the Court issued a minute order correcting the error.  As a result, the

2   summonses issued on November 27, 2019 were withdrawn from the docket.  On

3   December 20, 2019, the U.S. Marshals personally served Dr. Montgomery with a copy of

4   the summons withdrawn by the December 10, 2019 order.  ECF Nos. 36-37.  On

5   December 19, 2019, Deputy Olsen was served by mail with a copy of the withdrawn

6   summon. On January 7, 2020, Montgomery and Olsen filed a motion to quash service of

7   the summonses. ECF No. 45-1.

8          On February 10, 2020, the Court granted the motion to quash as to Defendants

9   Olsen and Montgomery, and directed that the Clerk of Court issue a new summons as to

10  all the named Defendants in the SAC.  In addition, the Court granted the motion to amend

11  as to Counts One, Two, Three, Five, Six and Seven, subject to certain limitations and

12  denied it as to Count Four.[1]

13  **II.    Factual Background**

14         The factual background has been recited at length in prior orders.[2]  In brief and

15  most relevant part, Plaintiff arrived at San Diego County Jail on October 11, 2018.  In

16  Count One, Plaintiff alleges that all Defendants are practicing a blanket policy of "no

17  narcotic pain medication in violation of the Eighth Amendment."  SAC at 3.[3]  Plaintiff

18  alleges that, after his arrival, Plaintiff's pharmacy faxed Plaintiff's prescriptions to the jail

19  but Plaintiff was never provided with his prescription medication.  *Id.* at 9.  Plaintiff

20  argues that there is "no penological purpose" for this policy and that "[s]uch a blanket

21  policy is unconstitutional."  *Id.* at 4.

22

23  ――――――――――――――

24  [1] The Court also denied Plaintiff's motion for a temporary restraining order and emergency injunction,

25  noting that his motion was premised on events outside of the scope of this action and additionally,
    appeared to be moot given the provision of medical care that was already provided to him.  ECF No. 53

26  at 17-18.

    [2] The factual background is recited in the Court's prior orders denying Plaintiff's motions to join

27  defendants and claims (ECF No. 30) and granting in part and denying in part Plaintiff's motion for leave
    to file a second amended complaint (ECF No. 53).

28  [3] Due to the inconsistent paragraph numbering, the Court refers to the ECF pagination for the SAC.

3:19-cv-0034-GPC-RBB

1         In the SAC, Plaintiff alleges that he was denied medical care between October and

2    November of 2018 based on the following allegations: (1) Plaintiff developed MRSA[4]

3    infection within a day of arriving to jail facility (Count Two); and (2) Plaintiff has been

4    denied prescription medication to manage the pain related to his opioid withdrawals.

5         Plaintiff alleges that as a result of the denial of the prescription medication, he has

6    "suffered severely"; his "sleep is denied"; and "often times can't even focus on reading a

7    book due to the pain." *Id.* Plaintiff states that his "[d]aily activities such as putting on

8    clothes, cleaning, and showering can not be done without suffering through severe pain"

9    and that his "blood pressure has dramatically increased." *Id.* Plaintiff also alleges that he

10   suffers from cervical and spinal stenosis, degenerative disk disease, scoliosis, and severe

11   pain and inflammation in his thoracic spine. *Id.* at 4, 5.

12       ***Dr. Leon***

13        With respect to Dr. Leon, Plaintiff alleges a violation of his right to adequate

14   medical on the basis of denial of prescription medication (Count One) as described

15   above, and for failure to provide Plaintiff with treatment for the MRSA infection (Count

16   Two). With respect to the MRSA infection, Plaintiff alleges that his infection worsened

17   for three months until November 30, 2018 when a judge ordered Plaintiff to be seen by a

18   medical professional. *Id.* at 6. Plaintiff alleges that due to Dr. Leon's failure to provide

19   treatment, Plaintiff has sustained a permanent black scar on his ankle and permanent

20   feelings of a "numb-like sensation to the touch that sends a minor painful sensation to the

21   foot." *Id.* at 6.

22        Plaintiff also brings a personal injury claim against Dr. Leon for refusing to taper

23   Plaintiff off his opioid pain management medications (Count Five) which caused Plaintiff

24   to suffer from extreme withdrawal symptoms and to collapse and hit his head on a steel

25

26   _____

27   [4] The Merriam-Webster online dictionary defines "MRSA" to mean "methicillin-resistant
     Staphylococcus aureus." Merriam-Webster, https://www.merriam-webster.com/dictionary/MRSA (last
28   visited Feb. 5, 2020).

1  door on November 5, 2018.  *Id.* at 9.  Plaintiff alleges that the Physician Desk Reference

2  ("PDR") book warns users of his pain management medication, Lyrica, to "[a]void abrupt

3  withdrawal.  Gradually taper over 1 week."  Plaintiff further alleges that the PDR also

4  warns against abrupt withdrawal from his morphine medication.  *Id.* at 9.

5  Plaintiff also alleges that Leon prescribed nonsteroidal anti-inflammatory drug

6  ("NSAID") medication which Plaintiff alleges subjected Plaintiff's liver and kidneys to

7  unnecessary risk of harm.  *Id.* at 8.

8  ### *Dr. O'Brien*

9  In Count One, Plaintiff alleges that he has written letters addressed to Dr. O'Brien

10  to no avail and that the Defendants (Dr. Leon and Dr. O'Brien) are practicing a blanket

11  policy of no narcotic pain medication in violation of the Eight Amendment.  *Id.* at 7. In

12  Count Three, Plaintiff alleges that Dr. O'Brien is a jail medical officer and has continued

13  to deny him the treatments ordered by the jail physician.  *Id.*[5]

14  **III.  Discussion**

15  Defendants Dr. Arturo Leon ("Leon") and Dr. Mark O'Brien ("O'Brien") argue

16  that Plaintiff's First, Second, Third, and Fifth Causes of Action fail to state a claim and

17  should be dismissed as against them without leave to amend.  Plaintiff opposes.

18  ### a. Legal Standard

19  Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure to

20  state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal

21  under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or

22  sufficient facts to support a cognizable legal theory.  *See Balistreri v. Pacifica Police*

23  *Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990).  Under Rule 8(a)(2), the plaintiff is required

24  only to set forth a "short and plain statement of the claim showing that the pleader is

[5] Plaintiff also alleges (1) a retaliation claim against Deputy Olsen, claiming that Deputy Olsen placed Plaintiff in administrative segregation one week after Plaintiff filed the original complaint in this Court (SAC at 10); and (2) that County of San Diego is liable since all other Defendants were acting as agents, employees, or co-conspirators of the County.  SAC at 11.

3:19-cv-0034-GPC-RBB

1  entitled to relief," and "give the defendant fair notice of what the ... claim is and the

2  grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

3  A complaint may survive a motion to dismiss only if, taking all well-pleaded factual

4  allegations as true, it contains enough facts to "state a claim to relief that is plausible on

5  its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at

6  570). "A claim has facial plausibility when the plaintiff pleads factual content that allows

7  the court to draw the reasonable inference that the defendant is liable for the misconduct

8  alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by

9  mere conclusory statements, do not suffice." *Id.* "In sum, for a complaint to survive a

10  motion to dismiss, the non-conclusory factual content, and reasonable inferences from

11  that content, must be plausibly suggestive of a claim entitling the plaintiff to

12  relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations

13  omitted). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged

14  in the complaint, and draws all reasonable inferences in favor of the plaintiff. *al-Kidd v.*

15  *Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009).

16       Where a motion to dismiss is granted, "leave to amend should be granted 'unless

17  the court determines that the allegation of other facts consistent with the challenged

18  pleading could not possibly cure the deficiency.' " *DeSoto v. Yellow Freight Sys., Inc.*,

19  957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture*

20  *Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would

21  be futile, the Court may deny leave to amend. *See Desoto*, 957 F.2d at 658; *Schreiber*,

22  806 F.2d at 1401.

23       **b.  Violations of Right to Medical Care (First, Second and Third Causes of**

24           **Action)**

25       "The government has an 'obligation to provide medical care for those whom it is

26  punishing by incarceration,' and failure to meet that obligation can constitute an Eighth

27  Amendment violation cognizable under § 1983." *Colwell v. Bannister*, 763 F.3d 1060,

28  1066 (9th Cir. 2014). The motivating principle underlying this obligation is the belief

3:19-cv-0034-GPC-RBB

1  that the public "be required to care for the prisoner, who cannot by reason of the

2  deprivation of his liberty, care for himself." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

3  "In order to prevail on an Eighth Amendment claim for inadequate medical care, a

4  plaintiff must show deliberate indifference to his serious medical needs." *Id*. (internal

5  citations omitted). "This includes both an objective standard—that the deprivation was

6  serious enough to constitute cruel and unusual punishment—and a subjective standard—

7  deliberate indifference." *Id.* (internal citations omitted).

8      To meet the objective element of the standard, a plaintiff must demonstrate the

9  existence of a "serious medical need." *Estelle*, 429 U.S. at 106. Such a need exists if

10 failure to treat the injury or condition "could result in further significant injury" or cause

11 "the unnecessary and wanton infliction of pain." *Jett v. Penner,* 439 F.3d 1091, 1096

12 (9th Cir. 2006). "Indications that a plaintiff has a serious medical need include the

13 existence of an injury that a reasonable doctor or patient would find important and worthy

14 of comment or treatment; the presence of a medical condition that significantly affects an

15 individual's daily activities; or the existence of chronic and substantial pain." *Colwell*,

16 763 F.3d at 1066 (internal citations omitted).

17     The subjective element of the standard is satisfied by showing "(a) a purposeful act

18 or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by

19 the indifference." *Jett*, 439 F.3d at 1096. Deliberate indifference "may appear when

20 prison officials deny, delay or intentionally interfere with medical treatment, or it may be

21 shown by the way in which prison physicians provide medical care." *Hutchinson v.

22 United States,* 838 F.2d 390, 394 (9th Cir. 1988). "In deciding whether there has been

23 deliberate indifference to an inmate's serious medical needs, we need not defer to the

24 judgment of prison doctors or administrators." *Hunt v. Dental Dep't,* 865 F.2d 198, 200

25 (9th Cir. 1989).

### 1. First Cause of Action

27     The First Cause of Action is alleged against Dr. Leon for his refusal to provide

28 Plaintiff with morphine in order to treat Plaintiff's opioid addition withdrawal symptoms

1    and Dr. Leon's prescription of NSAID medication that Plaintiff alleges aggravated his

2    gastrointestinal condition.  As against Dr. O'Brien, Plaintiff alleges that he wrote letters

3    addressed to Dr. O'Brien to no avail and alleges in a conclusory fashion that Dr. O'Brien

4    practiced a blanket policy of no narcotic pain medication.  SAC at 3.

5          Defendants argue that Plaintiff's claim should be dismissed since he has failed to

6    sufficiently allege both requisite prongs for deliberate indifference: (1) the purposeful act

7    or failure to respond to a prisoner's pain or possible medical need and (2) the harm

8    caused by the indifference.

9          On the first prong, a purposeful act or failure to respond, Dr. Leon argues that

10   Plaintiff's complaints about Dr. Leon – *i.e.*, prescribing Plaintiff NSAID medication and

11   refusing to taper Plaintiff off morphine are insufficient to show deprivation of medical

12   care – because they show that Dr. Leon actually did respond to and address Plaintiff's

13   medical needs, and therefore disprove the allegation that Dr. Leon committed a

14   purposeful act or failed to respond to a prisoner's pain or possible medical need.  Plaintiff

15   counters that Defendants did not respond reasonably to the risk since his pharmacy faxed

16   over "6 months worth of prescription records" to the prison.  ECF No. 65 at 6.[6]  Plaintiff

17   also alleges that Defendants have Plaintiff's medical records from "Family Health Center

18   as well as past medical records proving [his] severe medical conditions."  ECF No. 65 at

19   10.  Based on this, Plaintiff argues that Defendants were aware that Plaintiff was

20   receiving opioid pain management and were also aware "of how long Plaintiff had been

21   on opioid pain management" and that insured "FDA guidelines" and standard medical

22   care mandate the tapering of any patient's opioid medication to address withdrawal

23   symptoms.  *Id.*

24

25

26   [6] Plaintiff cites *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) for this proposition.  While the Supreme
     Court in *Farmer* did consider the question of "deliberate indifference" under the Eighth Amendment, the
27   factual allegations are markedly different.  In *Farmer*, petitioner filed a *Bivens* complaint, alleging that,
     placing petitioner, a transsexual female, in the prisons general population demonstrated a deliberate
28   indifference to the petitioner's safety.

On the second prong, harm caused by deliberate indifference, Dr. Leon contends that Plaintiff has failed to establish any causal relationship between Dr. Leon's actions and his harm.  On the refusal to provide Plaintiff with morphine, Defendants allege that Plaintiff has failed to establish that Dr. Leon caused Plaintiff "harm separate from the underlying pain caused by his preexisting conditions."  ECF No. 58-1 at 6.  However, the crux of Plaintiff's argument is that Dr. Leon's refusal to prescribe Plaintiff morphine to ease his opioid addiction withdrawal symptoms has led to his deterioration in health because the morphine would have alleviated the pain caused by his preexisting conditions.  Additionally, Plaintiff has sufficiently alleged harm in arguing that he has "suffered withdrawals and was sent to the ER multiple times" and also has suffered a "continued increase" in his blood pressure due to the chronic pain.  ECF No. 65 at 9-10.

In *Jett*, the Ninth Circuit held that the district court prematurely dismissed the plaintiff's claims where he alleged that the prison doctors were deliberately indifferent to his medical needs in light of his fractured thumb.  The Ninth Circuit found that "deliberate indifference" could still exist even where prison doctors ordered x-rays, prescribed pain medicine, and continued to see the plaintiff prisoner.  *See Jett*, 439 F.3d at 1096 (9th Cir. 2006).  The *Jett* court pointed to evidence that suggested the doctors might have been aware of aftercare instructions but did not follow them.  *Id*. at 1097.  At this time, it would be premature to dismiss Plaintiff Sekerke's claims with respect to the refusal to prescribe opioid medication or with respect to the prescription of the NSAIDS.  *See e.g., Goldman v. Fed. Bureau of Prisons*, 768 F. App'x 714 (9th Cir. 2019) (district court dismissal was premature where incarcerated plaintiff alleged that prison officials denied prescribed medication for his opioid addiction).

Dr. Leon argues that Plaintiff's claims should be considered in the context of "medical malpractice," rather than deliberate indifference, citing *Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").  However, in *Estelle*, the Supreme Court focused on the "inadvertent" or "accidental" nature of the prison officials' actions.  *Id.* at 105-106.  The

9

1 *Estelle* plaintiff had been prescribed multiple medications for pain related to his lower

2 back injury, but his prescription was not filled because the prison staff officials lost his

3 prescription. *Id.* at 100.  Here, Sekerke's allegations target Dr. Leon's actions that were

4 not inadvertent or accidental, but instead, were deliberately undertaken in accordance

5 with an internal policy declining to prescribe any narcotics to incarcerated individuals.

6 Accordingly, Dr. Leon's motion to dismiss is **DENIED** as to the alleged refusal to

7 provide morphine.

8      On the question of the provision of the NSAID medications, Dr. Leon argues that

9 Plaintiff has not shown how this caused him pain.  Plaintiff alleges that the prescription

10 of NSAID medications is "so below the standard of care that it amounts to no treatment at

11 all." ECF No. 65 at 7.  Plaintiff does not argue that the provision of NSAID medications

12 amounts to deliberate indifference, but rather, that it falls short of the requisite standard

13 of care.  Therefore, while the provision of NSAID medication may provide relevant

14 factual background, Dr. Leon's actions in providing NSAID medication are not

15 actionable and the motion to dismiss this theory of liability is **GRANTED**.

16      Similarly, with respect to Plaintiff's allegations regarding Dr. Leon's attempt to

17 present himself as "Dr. Jose Jiminez," the Court finds that Plaintiff has not alleged how

18 this might have caused any harm.  As such, Plaintiff's theory of liability based on this

19 allegation is insufficient and the motion to dismiss this theory is **GRANTED** with

20 prejudice.

21      As to Dr. O'Brien, the two bare allegations against him are so vague that they do

22 not reveal a purposeful act or failure to respond that led to Plaintiff's harm caused by

23 deliberate indifference.  Consequently, Dr. O'Brien's motion to dismiss is **GRANTED**.

24                **2.  Second Cause of Action**

25      The Second Cause of Action is brought against Dr. Leon for his alleged failure to

26 provide Plaintiff with any treatment for the MRSA infection that plaintiff contracted

27 "within a day of arriving" to the jail.  SAC at 6.  Dr. Leon argues that Plaintiff's second

28

3:19-cv-0034-GPC-RBB

1    cause of action should be dismissed because it is an "impermissible attempt to transform

2    a medical malpractice [claim] into a constitutional violation."  ECF No. 58-1 at 7.

3            On the first prong of deliberate indifference, a purposeful act or failure to respond,

4    Dr. Leon argues that MRSA treatment is not a serious medical need since it does not

5    significantly affect his activities or create chronic and substantial pain.  On the second

6    prong, harm caused by deliberate indifference, Defendants argue that Plaintiff has not

7    established a causal relationship and his allegations are too conclusory to establish that

8    Dr. Leon's conduct somehow contributed to the worsening of Plaintiff's condition.  The

9    Court disagrees.  Plaintiff alleges that his infection worsened over the course of the three

10   months that elapsed before he was able to get adequate treatment and that the delayed

11   treatment caused a permanent black scar and permanent damage (i.e., a "numb-like

12   sensation to the touch that sends a minor painful sensation to the foot).  SAC at 6.  At this

13   time, dismissing Plaintiff's claims would be premature.  *See Jett*, 439 F.3d at 1096 (9th

14   Cir. 2006); *Goldman*, 768 F. App'x 714 (9th Cir. 2019).

15           Dr. Leon argues that since Plaintiff did not address this argument in his opposition,

16   and so, on this basis, has failed to preserve his argument for appeal citing *Walsh v. Nev.*

17   *Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006).  However, *Walsh* is

18   inapplicable since there the plaintiff failed to plead her claim in her complaint.  Further,

19   the *Walsh* court explained that "no bright line exists to determine whether an issue has

20   been properly raised below, but a workable standard is that the issue must be raised

21   sufficiently for the trial court to rule on it."  *Walsh v. Nevada Dep't of Human Res.*, 471

22   F.3d 1033, 1037 (9th Cir. 2006) (internal citations omitted).  Here, the issue of the MRSA

23   infection was properly raised before the trial court and Dr. Leon's motion to dismiss is

24   **DENIED**.

25                           **3.  Third Cause of Action**

26           The third cause of action is brought against Dr. O'Brien and against non-movant

27   Defendant Jon Montgomery.  Plaintiff primarily brings his allegations against

28   Montgomery for his alleged instructions to jail physicians to uphold the jail policy of

1  refusing to prescribe any narcotic pain medication for incarcerated individuals.  With

2  respect to O'Brien, Plaintiff only states:  "Defendant Jon Montgomery and Mark O'Brien

3  continue to deny the treatments ordered by the jail physician."  SAC at 9.  Defendants

4  argue that this allegation is too "vague" to be sustained since Plaintiff has alleged neither

5  a serious medical need nor causation.  The Court agrees with Defendants and finds that

6  Plaintiff has failed to allege sufficient facts with respect to Dr. O'Brien and **GRANTS**

7  Dr. O'Brien's motion to dismiss and DISMISSES the claim with respect to Dr. O'Brien.

8  ### c.  Personal Injury (Fifth Cause of Action)

9  In the Fifth Cause of Action, Plaintiff brings a personal injury claim against Dr.

10  Leon for refusing to taper Plaintiff off his opioid pain management medications, since, as

11  a result, Plaintiff suffered from extreme withdrawal systems and on November 5, 2018,

12  Plaintiff collapsed and hit his head on a steel door.  *Id.* at 9.  Paramedics were called and

13  Plaintiff was sent by ambulance to the UCSD hospital.  *Id*.

14  Dr. Leon argues that Plaintiff's claim should be understood as a claim for

15  professional negligence which requires that a plaintiff establish that a duty of care was

16  owed, the breach of such duty, a causal connection between alleged breach and claimed

17  injury, and actual damage.  *See Hanson v. Grode*, 76 Cal. App. 4th 601, 606 (1999).[7]

18  Plaintiff does not address this argument in his opposition. Construing Plaintiff's claim as

19  one for professional negligence, Plaintiff has failed to sufficiently allege what duty

20  Defendants have allegedly breached.

21  While the court "ha[s] an obligation where the petitioner is pro se, particularly in

22  civil rights cases, to construe the pleadings liberally and to afford the petitioner the

23  benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing

24  *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may not "supply essential

25  _____

26

27  [7] Defendant cites California Code of Civil Procedure Section 340.5(2), which does not list the elements of an action against a health care provider, but provides that an action for injury against a health care provider must be brought within three years after the date of injury or one year after the plaintiff

28  discovers the injury, whichever occurs first.

1    elements of claims that were not initially pled." *Ivey v. Board of Regents of the*

2    *University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

3         Plaintiff's injuries that he sustained as a result of hitting his head on the steel door

4    can be understood as part of his allegations related to the injuries he suffered as a result

5    of inadequate medical care; however, he has not sufficiently alleged a claim for personal

6    injury or professional negligence.  As such, Defendants' motion to dismiss the fifth cause

7    of action is **GRANTED**.

8         **d. Conclusion**

9         In sum, the Court hereby **GRANTS** DR. O'Brien's motion to dismiss the first and

10   third causes of action without leave to amend and further **GRANTS** Dr. Leon's motion to

11   dismiss the first cause of action as to the NSAID theory of recovery and the fifth cause of

12   action without leave to amend.  The Court **DENIES** Dr. Leon's motion to dismiss the

13   first cause of action as to the failure to provide morphine theory of recovery and the

14   second cause of action.[8]

15        **IT IS SO ORDERED**.

16   Dated:  April 15, 2020

17                                             Hon. Gonzalo P. Curiel

18                                             United States District Judge

19

20

21

22

23

24   _____

25

26   [8] In his opposition, Plaintiff improperly attaches a separate motion for a court order to provide Plaintiff
     with "pro-per legal status and access to the jail's law library."  ECF No. 65 at 12.  The underlying
     motion to dismiss was filed by Dr. Leon and Dr. O'Brien, and not by the County of San Diego.  The
27   County of San Diego would be the proper party to address this issue and it is not clear whether the
     County of San Diego was served with a copy of this motion.  If Plaintiff wishes to have this motion
28   heard by the Court, he must file this separately and direct it to the County of San Diego.

                                             13