UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH WAYNE SEKERKE,<br>Booking No. 18165284,<br><br>                              Plaintiff,<br><br>vs.<br><br>ARTURO LEON; MARK O'BRIEN; JON MONTGOMERY; DANE OLSEN and COUNTY OF SAN DIEGO,<br><br>                              Defendants. | Case No.: 3:19-cv-0034-GPC-RBB<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION**<br><br>**[ECF No. 85]** |

Before the Court is Plaintiff's motion for reconsideration of the Court's prior order denying Plaintiff's motion for a temporary restraining order and injunction. ECF No. 85 ("TRO Motion"). Defendant Arturo Leon filed an opposition on July 8, 2020. ECF No. 89. Defendants Jon Montgomery and Dane Olsen filed an opposition on July 10, 2020. ECF No. 96.[1] Plaintiff filed replies to both oppositions. ECF Nos. 100, 101. The Court

---

[1] Defendant County of San Diego filed an opposition joining in part Montgomery and Olsen's Opposition on Sections I through IV but does not join the opposition regarding service of the Summons and Second Amended Complaint. ECF No. 98.

1

hereby **DENIES** Plaintiff's motion.

I.  Background

On January 7, 2019, Plaintiff proceeding *pro se* and *in forma pauperis*, filed this lawsuit.  ECF No. 1.  Plaintiff is currently incarcerated in San Diego County Jail as a pretrial detainee.  On February 10, 2020, the Court granted Plaintiff's motion to file a Second Amended Complaint ("SAC").  ECF No. 53.  In the SAC, Plaintiff argues that his right to medical care has been violated due to Defendants' policy of refusing to provide narcotics to inmates and that he has suffered retaliation as a result of filing these claims.  ECF No. 54 ("SAC").  On April 15, 2020, the Court granted in part and denied in part Defendants Arturo Leon and Mark O'Brien's motion to dismiss the SAC.  ECF No. 68.  The remaining causes of action in the SAC are: Inadequate Medical Care against Dr. Leon as to the failure to provide morphine theory of recovery (claim one); Inadequate Medical Care – methicillin-resistant Staphylococcus aureus ("MRSA") Infection (failure to provide treatment) against Dr. Leon (claim two); Inadequate medical care – Denying Prescription against Dr. Montgomery (claim three); State Supplemental Medical Claims against Dr. Leon (claim four); Retaliation against Deputy Olsen (claim six); and Liability of San Diego County based on all other Defendants being agents, employees, or co-conspirators (claim seven).

On February 10, 2020, the Court denied Plaintiff's prior motion for a TRO and emergency injunction in order to obtain a magnetic resonance imaging ("MRI") scan, which Plaintiff alleged was recommended by a physician on a November 20, 2019 due to Plaintiff's hydrocephalus condition.  ECF No. 53.  In denying Plaintiff's motion, the Court explained that Plaintiff sought relief based on events that were outside of the scope of the events that give rise to this action—*i.e.*, the October-November 2018 provision of medical care and the "no narcotic" policy.  ECF No. 53 at 17.

On May 26, 2020, the Court denied another motion for a TRO wherein Plaintiff sought to obtain Tramadol medication, which was prescribed to Plaintiff by a neurologist during an April 20, 2020 visit to a neurologist at University of California San Diego.

ECF No. 80. In Plaintiff's motion, he described Tramadol as a "non-narcotic." *Id.* ECF No. 77 at 1. On this basis, the Court denied the motion as being outside the scope of Plaintiffs' numerous claims in the SAC, which are limited to the alleged inadequate medical care on the basis of the jail's refusal to provide narcotic medication, inadequate medical care with respect to Plaintiff's MRSA infection, and retaliation for filing these claims.

Plaintiff has now filed a motion for reconsideration of the Court's prior denial on the basis that Plaintiff previously mischaracterized Tramadol as a non-narcotic, and that the jail physician, Peter Freedland, has informed Plaintiff that Tramadol is in fact a narcotic medication. ECF No. 85.

## II. Motion for Reconsideration

A motion for reconsideration is appropriate if the district court (1) is presented with newly discovered evidence; (2) commits clear error or its initial decision was manifestly unjust; or (3) if there is an intervening change in controlling law. *Sch. Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1262 (9th Cir. 1993).

In the prior order, the Court found that "[t]he relationship between the preliminary injunction and the underlying complaint must be 'sufficiently strong where the preliminary injunction would grant relief of the same character as that which may be granted finally,' " ECF No. 80 at 3, and "[s]ince Plaintiff is seeking to obtain *non-narcotic* prescription medication prescribed as a result of a visit to a neurologist, he is seeking relief that is outside the scope of this action." *Id* at 4. (emphasis added).

Here, Plaintiff has presented new evidence as to the nature of Tramadol medication, showing that it is a narcotic and therefore arguably within the scope of Plaintiff's claims regarding the jail's refusal to provide narcotic medication. ECF No. 85. Defendants Montgomery and Olsen argue that reconsideration should be denied because Plaintiff has failed to show new circumstances or facts that could have been raised in his original motion. ECF No. 96 at 12. However, Plaintiff claims that he was simply misinformed at the time of filing his motion for TRO and was later corrected. ECF No.

101 at 2. Because Plaintiff is acting *pro se* and the Court has a duty to treat *pro se* plaintiff's liberally, the Court finds that Plaintiff has shown that new facts—namely, that Tramadol is a narcotic medication—counsel in favor of the Court's consideration of the underlying motion. *See Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988) ("the court … must afford [*pro se*] plaintiff the benefit of any doubt"); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (the court's duty to liberally construe a *pro se* litigant's pleadings is "particularly important in civil rights cases"). Accordingly, the Court reconsiders Plaintiff's motion for a temporary restraining order ("TRO") and injunction.

## III.  Injunctive Relief

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Resources Def. Council*, 555 U.S. 7, 24 (2008). "In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id*. (citing *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987) (internal citations omitted)). As such, the "grant of a preliminary injunction is a matter committed to the discretion of the trial judge[.]" *Evans v. Shoshone–Bannock Land Use Policy Comm'n*, 736 F.3d 1298, 1307 (9th Cir. 2013). This discretion allows courts to properly evaluate when it is appropriate to grant preliminary relief in light of the "infinite variety of situations which may confront it." *A.L.K. Corp. v. Columbia Pictures Indus., Inc.*, 440 F.2d 761, 763 (3d Cir. 1971). District courts exercise this discretion according to a four-factor test mandated by traditional principles of equity. *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006). The test requires a plaintiff to demonstrate (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in the plaintiff's favor, and (4) that an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

/ / /

**a. Sufficient Nexus**

As a threshold requirement, district courts must consider whether the nature of the relief sought in the motion is sufficiently related to the claims that give rise to the action. "The Ninth Circuit has formally adopted the rule . . . which requires a sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself." *Hansen v. Cty. of San Diego*, 2018 WL 3584461, at *2 (S.D. Cal. July 26, 2018). As such, "[t]here must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint for a court to grant a motion for injunctive relief; this requires a sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015). The relationship between the preliminary injunction and the underlying complaint must be "sufficiently strong where the preliminary injunction would grant relief of the same character as that which may be granted finally." *Id.* (citations omitted). "Absent that relationship or nexus, the district court lacks authority to grant the relief requested." *Id.*

Defendants note that this Court has already decided "[t]his action is limited to Plaintiff's claims arising out of the medical care he received between October and November 2018 and the related enforcement of the 'no narcotic' policy." ECF No. 89 at 13 (quoting ECF No. 53 at 17). They argue that "Plaintiff has not established that the alleged prescription of Tramadol 'to treat pain' is related to any treatment for opioid withdrawal or MRSA in late 2018," ECF No. 89 at 13-14, and the issues of the underlying claim "are not implicated in the Plaintiff's Tramadol Motion or Motion for Reconsideration." ECF No. 96 at 10-11.

The Court disagrees. Here, the Plaintiff is requesting a TRO to obtain treatment which he claims is being denied to him under the same policy which is the basis for his underlying complaint. ECF No. 77. Defendants contend that "whether Plaintiff is *currently* in need of narcotic medication is a distinct factual inquiry from whether his care

*in 2018* was constitutionally adequate." ECF No. 96 at 16. However, Plaintiff's underlying claim ultimately concerns the constitutionality of the jail facility's narcotics policy which he asserts is a "blanket" ban in violation of the Eighth Amendment. Because Plaintiff is still subject to that policy while incarcerated in San Diego Central Jail, his TRO Motion is presently related to this element of his underlying claim. *See Williams v. Navarro*, No. 3:18CV1318-DMS-RBM, 2019 WL 2966314, at *4 (S.D. Cal. July 9, 2019) ("The character of relief requested in the Motion, i.e., increased law library access, relates to conduct alleged in the Complaint, i.e., denial of the right to law library access."). As such, the Court finds a sufficient nexus between the relief requested in the TRO Motion and claims raised by Plaintiff in the SAC.

   **b.**  **Plaintiff Fails to Establish the *Winter* Elements**

  Defendants argue that, even assuming a sufficient nexus between the relief sought and the underlying claim, Plaintiff's motion should be denied because Plaintiff has not shown he is likely to succeed on the merits and he has not shown he is likely to suffer irreparable harm. ECF No. 89 at 12-15; ECF No. 96 at 16-20. The Court agrees.

     **1.**  **Plaintiff Has Not Shown He Is Likely to Succeed on The Merits**

  Plaintiff does not provide sufficient evidence to show he is likely to succeed on the merits of the claims in the SAC. In order to prevail, Plaintiff must demonstrate that he is likely to succeed on the merits of his underlying claim asserting inadequate medical care.

  In order for a pretrial detainee to make out a claim for inadequate medical care, a pretrial detainee must show the following four elements: "(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018), *cert. denied sub nom. Cty. of Orange, Cal.*

*v. Gor*don, 139 S. Ct. 794 (2019).  "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[ ] on the facts and circumstances of each particular case.' " *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (citing cases).  Under this objective test, the question is "whether there was a 'substantial risk of serious harm to the plaintiff that could have been eliminated through reasonable and available measures that the officer did not take, thus causing the injury that the plaintiff suffered.' " *Horton v. City of Santa Maria*, 915 F.3d 592, 602 (9th Cir. 2019).

In the SAC, Plaintiff alleges that the facility's "no narcotics" policy inappropriately deprives Plaintiff of the types of pain medication he requires and that he was improperly and negligently treated for a MRSA infection.  ECF No. 54 at 3.  However, it is not malpractice for a physician to differ in opinion from another or to weigh the benefits and risks of various treatment plans.  *See Brauner v. Coody*, 793 F.3d 493, 497 (5th Cir. 2015) (plaintiff alleged that he required more pain relief than the medications provided by prison doctors finding that plaintiffs' claims seeking different types of medication than the ones provided by the prison doctors were "'classic example[s] of a matter for medical judgment'" and, as a matter of law, do not amount to deliberate indifference).  Defendants argue that Plaintiff has a history of drug abuse and drug seeking behavior which persists to the present, *see* Ex. B, 96-2 at 10; Ex. C, 96-2 at 16-17; Ex. D at 20-22; ECF No. 96-2, Ex. E at 26-31, and accordingly, Plaintiff's medical care was appropriate, citing numerous medical professionals which determined that narcotic medications are not medically necessary.  ECF No. 96-2, Ex. D at 20-21.  As such, it is within the realm of responsible medical treatment to deny a patient like Plaintiff access to narcotic medications where it is a matter of professional opinion that they may do more harm than good.  *See, e.g. Millner v. Dileo,* No. 117CV00507SABPC, 2017 WL 4770379, at \*3 (E.D. Cal. Oct. 23, 2017) (Plaintiff with history of self-mutilating his surgical wounds was not granted temporary injunction because the surgery he requested could do more harm than good).

7

3:19-cv-0034-GPC-RBB

Plaintiff also asserts that the facility has a "blanket no narcotics policy." In his Reply, Plaintiff suggests this was how the policy was represented to him by Dr. Leon. ECF No. 100 at 3. However, it appears the San Diego County Sheriff's Department Operations Manual ("Manual") does not ban narcotic prescriptions altogether but instead directs treating physicians to consider a patient's prior medical records and determine whether the inmate legitimately requires narcotics. ECF No. 96-2, Ex. A. The Manual provides that the Sheriff's Medical Services Division "does not prescribe opioids . . . unless certain criteria are met" and lists the criteria for "acute pain" and for "chronic pain." *Id.* at 4-5. This Manual's effect may be to limit the availability of narcotic medications in jail facilities, but nevertheless permits physicians to use their discretion in prescribing narcotic medications, and so is not a "blanket" policy as the Plaintiff describes. Accordingly, Plaintiff fails to establish the four *Gordon* elements, as Plaintiff points to no evidence which suggests that the County policy or the Defendants themselves put Plaintiff at risk of serious harm, or that Defendants neglected to take actions which might have abated said risk. As such, Plaintiff has failed to show that he is likely to succeed on the merits on this claim.

In the TRO Motion, Plaintiff alleges that a UCSD neurologist specialist prescribed him Tramadol. He alleges that the jail doctors sent him to see neurologists who "ordered" Plaintiff to "start Tramadol 50 mg three times daily as needed" and printed out a "copy of that specifically." ECF No. 101 at 2. Plaintiff supports that assertion with a one-page Exhibit which states, "Start Tramadol 50mg three times daily as needed" with a handwritten note at the bottom, "Dr. Ronald Elis" and "Dr. Angelica." *Id.* at 6.[2]

---

[2] District courts are permitted, under Federal Rules of Evidence ("Rule") 201, to consider material not attached to the complaint only if the documents' "authenticity ... is not contested" and "the plaintiff's complaint necessarily relies" on them. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citations omitted). Second, a court may take judicial notice of "matters of public record" under Rule 201. *Id.* at 688-89. However, under Rule 201, a court may not take judicial notice of a fact that is "subject to reasonable dispute." Fed. R. Evid. 201(b). The Court accordingly takes judicial notice of the fact of the existence of all exhibits submitted by Plaintiff and Defendant, but not the

Defendants Montgomery and Olsen argue that Plaintiff's representations are misleading. On or around April 20, 2020, Plaintiff visited UCSD where he received treatment from both a neurologist and a nurse practitioner ("NP"). ECF 96-2, Ex. F. Defendants state that Plaintiff complained of neck pains and was prescribed a one-time dose of Tramadol in anticipation of COVID-19 preventing a timely follow up if necessary. ECF 96-2, Ex. D at 21-22. This prescription was offered, not as a long-term treatment plan, but "PRN," which is short hand for *pro re nata*, meaning only when medically necessary. *Id*. at 20. When Plaintiff's primary care physician subsequently reviewed Plaintiff's chart on April 25, 2020, and noted "Tramadol has not been accepted based on medical necessity criteria. Only one medication increase at a time, and tramadol is a prn order from a 1 time provider. Pregabalin accepted. Tramadoll [sic] not medically necessary." ECF No. 96-2, Ex D at 23. Additionally, the medical chart notes that Dr. Freedland had a conversation with the prescribing NP from UCSD and confirmed that the Tramadol prescription was a one-time, PRN prescription. *Id*. at 21-22. Dr. Freedland's notes also state:

> It was clearly represented that this patient willfully did not disclose to the provider that he, in fact, had a previous dedicated pain management consult within the Jail system 2019 that recommended NON narcotic therpay [sic] only. By all accounts it appears this was not an attempt of the provider to supercede [sic] any previous specialist recommendation. Based on the practitioners account, the narcotic use, in this providers medical judgment was not warranted as the prescriber was not offered an accurate account of the patients previous specialist consult. I am very concerned that he may have attempted to obtain, procured the administration or prescription of, or attempted to procure the administration or prescription of, a controlled substance; and did so either by fraud, deceit, misrepresentation or subterfuge, or by the concealment of a material fact.

---

contents therein. *See Lee*, 250 F.3d at 659-60. Defendants Montgomery and Olsen also request that the Court take Judicial Notice of the fact that Plaintiff has filed over a dozen other actions making similar motions. ECF No. 96 at 8. (citing ECF No. 90-1, Ex. A-O, Dockets and Register of Actions). The Court grants this request, as these are uncontested "matters of public record."

9

3:19-cv-0034-GPC-RBB

*Id.* at 22.  Courts have previously found that when jail facilities or jail physicians take "reasonable available measures to abate the risk posed by [a detainee's] pain," then the standard for inadequate medical care is not met.  *Flentoil v. Santa Clara Cty. Dep't of Corr.*, No. 18-CV-03486-EMC, 2020 WL 571025, at *9 (N.D. Cal. Feb. 5, 2020).  Specifically, courts have denied claims for inadequate medical care if the claims were premised on disagreements about dosage or the type of medication provided.  *See e.g., Burton v. Dowrey*, 805 F.3d 776, 785 (7th Cir. 2015) (jail health-care provider's decision to provide synthetic opioid rather to provide opioids or contact the doctor who prescribed the opioids before incarceration did not amount to deliberate indifference); *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) (district court properly dismissed deliberate indifference claim based on failure to prescribe medication stronger than Motrin for plaintiff's broken wrist); *Meuir v. Green Cnty. Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007) (summary judgment properly granted for defendants on inmate's claim that nurses were deliberately indifferent in prescribing Motrin but not medicated mouthwash for bleeding gums).  Here, it appears that Plaintiff did receive medical care which took into consideration his pain management needs and that the jail medical staff undertook reasonable available measures to abate the risks posed by Plaintiff's pain.

The Ninth Circuit has held that a prison official may be held liable if "he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.' " *Castro*, 833 F.3d at 1067.  Here, Plaintiff's physician made a professional and informed opinion that the Tramadol was an inappropriate prescription.  Accordingly, the Court finds that Plaintiff has failed to show that he would accordingly succeed on the merits of a deliberate indifference claim.  *See Gauthier v. Stiles*, 402 F. App'x 203 (9th Cir. 2010) (affirming dismissal since plaintiff's disagreement with the dosage and type of pain medication administered after surgery did not constitute deliberate indifference).  As such, Plaintiff has failed to meet his burden of showing that the jail's decision to deny a Tramadol prescription poses a "substantial risk of serious harm to the plaintiff" and whether the provision of Tramadol medication would

be a "reasonable and available" measure to prevent any further injury to Plaintiff.

### 2. Plaintiff Has Not Shown He Is Likely to Suffer Irreparable Harm

Even if Plaintiff were able to show that he is likely to succeed on the merits of his claim, he would fail on the prong requiring that he show likelihood of suffering irreparable harm. The Ninth Circuit has held that mere "[s]peculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Caribbean Marine Servs. Co., Inc. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988) (citations omitted). "A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." *Id. See also Los Angeles Memorial Coliseum Comm'n v. National Football League,* 634 F.2d 1197, 1201 (9th Cir. 1980); *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1022 (9th Cir. 2016).

Here, Plaintiff's requested medication was a one-time prescription which was to be taken only *as needed*. Plaintiff has not provided any evidence to demonstrate that he needed Tramadol at any time such that the other medical treatments he was provided were not sufficient. Plaintiff has not demonstrated any harm besides to say that he has been "subjected to severe pain." ECF No. 101. Plaintiff argues that his other medications are not appropriate, but does not explain how Tramadol, rather than his other prescriptions, would do more to alleviate this pain. ECF No. 77; ECF No. 85; ECF No. 100; ECF No. 101.

Additionally, irreparable harm must be some harm that is contemplated in the future. "'[Past] exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief[.]'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Here, Plaintiff does not allege that Tramadol, a temporary pain relief medication, will have any effect on his future health or wellbeing. Further, he does not suggest or provide medical evidence that by not having access to the prescription he will be subjected to additional pain or other medical complications in the future.

Generally, the purpose of injunctive relief is to preserve the status quo. *Big*

*Country Foods, Inc. v. Bd. of Educ.*, 868 F.2d 1085, 1087 (9th Cir. 1989). Here, Plaintiff never claims to have had access to Tramadol before, that he medically requires the single dose of Tramadol now, or that he will be subjected to future suffering or pain without it. As such, requiring Plaintiff to be provided Tramadol prescription medication is not the type of relief that a temporary injunction is designed to provide. *Lamon v. Adams*, No. 1:09-CV-00205-LJO, 2011 WL 148275, at *2 (E.D. Cal. Jan. 18, 2011), *report and recommendation adopted,* No. 1:09-CV-00205-LJO, 2011 WL 841361 (E.D. Cal. Mar. 8, 2011) ("Plaintiff must identify a specific threat of future irreparable harm and request relief that is narrowly tailored to correct that harm.").[3]

### IV. Service

Defendants Montgomery and Olsen argue that Plaintiff's request should fail due to defective service. ECF No. 96 at 21. Since Plaintiff's TRO Motion is denied, the Court dismisses Defendant's claim of improper service as moot.

### V. Conclusion

For the foregoing reasons, the Plaintiff's Motion for Reconsideration of Temporary Restraining Order is **DENIED**.

**IT IS SO ORDERED**.

Dated: August 3, 2020

Hon. Gonzalo P. Curiel
United States District Judge

---

[3] Since Plaintiff's TRO motion fails on the first two prongs of the applicable legal test, the Court declines to address the remaining prongs—namely, whether equity or public interest weigh in Plainitff's favor.