UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH WAYNE SEKERKE,<br>CDCR #BP-1899,<br><br>                    Plaintiff,<br><br>vs.<br><br>ARTURO LEON;<br>COUNTY OF SAN DIEGO,<br><br>                    Defendants. | Case No.: 3:19-cv-0034-JO-RBB<br><br>**ORDER GRANTING DEFENDANTS'<br>MOTIONS FOR SUMMARY<br>JUDGMENT PURSUANT<br>TO Fed. R. Civ. P. 56**<br><br>**[ECF Nos. 140, 146]** |

Plaintiff Keith Sekerke ("Plaintiff" or "Sekerke"), proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983. *See* Compl., ECF No. 1.[1] Plaintiff claims that Defendants Arturo Leon and County of San Diego ("Defendants") violated his constitutional rights by denying him adequate medical care while he was housed at the San Diego Central Jail ("SDCJ"). *See id.* 3-5. Defendants moved for summary judgment of

---

[1] Throughout this Order and for ease of consistency and reference, the Court will cite to each document in the record using both the number assigned to the document and the page number automatically generated by its Case Management/Electronic Case File system ("ECF").

1

Plaintiff's claims. For the reasons stated below, the Court GRANTS Defendants' motions (ECF Nos. 140, 146) and directs the Clerk of Court to enter judgment.

# I. BACKGROUND

## A.  Procedural Background

Plaintiff initially filed his complaint against Dr. Arturo Leon on January 7, 2019. *See* Compl., ECF No. 1. On February 10, 2020, the Court issued an Order granting Plaintiff leave to file an amended pleading but limiting his claims against all Defendants to an October to November 2018 timeframe. *See* ECF No. 53 at 14. After a series of amendments, he also added Dr. Mark O'Brien, Dr. Jon Montgomery, Deputy Dane Olsen, and the County of San Diego as defendants. *See* Amd. Compl., ECF No. 54 (hereafter "SAC"). On April 15, 2020, the Court granted a 12(b)(6) motion dismissing Dr. O'Brien from the case. *See* ECF No. 68 at 13. On March 25, 2021, the Court granted a second 12(b)(6) motion dismissing defendant Olsen from the case. *See* ECF No. 126. On August 30, 2021, the parties agreed to dismiss Dr. Montgomery from the case with prejudice. *See* ECF No. 138.

Currently, only Dr. Leon and County of San Diego remain as defendants in this action. In his remaining claims against them, Plaintiff alleges that County of San Diego violated his constitutional rights by denying him narcotic pain medication pursuant to a blanket "no narcotics" policy for inmates. *See* SAC at 11. Plaintiff further alleges that Dr. Leon failed to adequately treat Plaintiff's pain condition and skin infection in deliberate indifference to his medical needs. *See id.* at 3-6.

Defendants Leon and County of San Diego separately filed motions for summary judgment of the claims against them pursuant to Federal Rule of Civil Procedure 56. Def. Leon's Mot. Summ. J., ECF No. 140; Def. County's Mot. Summ. J., ECF No. 146. The Court provided Plaintiff with notice of the requirements for opposing summary judgment as required by *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988), and *Rand v. Rowland,* 154 F.3d 952 (9th Cir. 1998) (en banc). *See* ECF Nos. 145, 148. Plaintiff filed his Opposition to these Motions on November 5, 2021. *See* ECF No. 154. On November 18,

2021, Defendant County of San Diego filed its Reply, and on November 22, 2021, Defendant Leon filed his Reply. *See* ECF Nos. 156, 157.

### B.    Plaintiff's Claims and Evidence

In his Second Amended Complaint ("SAC"), Plaintiff alleges the following facts in support of his municipal liability against the County and failure to treat claims against Dr. Leon. Because Plaintiff's SAC is verified under penalty of perjury, ECF No. 54 at 15, the Court will consider this complaint as an affidavit in opposition to summary judgment. *Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc).

Plaintiff alleges that he requires morphine to treat the pain associated with his diagnosis of cervical and spinal stenosis, degenerative disc disease, and scoliosis. *See* SAC at 3-4. Prior to his incarceration, Dr. John Qian allegedly treated Plaintiff's condition by prescribing him morphine three times a day because all other non-narcotic medications were ineffective. *See id.* at 4. When Plaintiff arrived at the SDCJ on October 11, 2018, he requested that jail officials obtain prescription records from his pharmacy to verify his active morphine prescription. *See id.* at 3.

According to Plaintiff, Dr. Leon examined him on or about October 13, 2018,[2] but refused to provide him with morphine because "it was against jail policy for any inmate to receive narcotic medication." *Id.* at 3, 8.  Despite knowing that Plaintiff had been treated with morphine for his pain condition, Dr. Leon not only refused to prescribe this drug but also refused to "even taper Plaintiff off the Morphine to prevent withdrawals." *Id.* at 8. Plaintiff claims the failure to provide this medication caused him to suffer pain, loss of sleep, and an increase in his blood pressure.  *See id.* at 4.

In addition to his refusal to provide narcotic medication, Plaintiff alleges that Dr. Leon also refused to treat the MRSA (i.e., methicillin-resistant staphylococcus aureus)

---

[2] While Plaintiff alleges that he was seen by Dr. Leon on October 13, 2018, the medical records submitted by Defendants indicates that the date Plaintiff was seen by Dr. Leon was October 17, 2018. *See* Def. County's List of Exhibits, Ex. E., ECF No. 146-2 at 31.

infection that he developed within a day of arriving at SDCJ. *See id.* As a result of the failure to treat his infection, Plaintiff claims that he developed a "permanent black scar" on his ankle and suffers from numbness that causes a "painful sensation" in his foot. *Id.* at 6.

## II. EVIDENTIARY OBJECTIONS

In opposition to his motion for summary judgment, Plaintiff submitted an affidavit from Jaylen Fleer, attesting that San Diego Sheriff Deputies routinely "decline to escort inmates to medical clinic and then fabricate a refusal by the inmate." Pl.'s Opp'n, Ex. C, ECF No. 154 at 22. Defendant County of San Diego objected to this sworn affidavit on several grounds, including lack of authentication, hearsay, and relevance. *See* Def. County's Obj. to Stmts., ECF No. 156-1. As this testimony is unrelated to Plaintiff's claims against Dr. Leon or the County, the Court sustains Defendant County of San Diego's objections on grounds of relevance.

The Court overrules the County's objections to Plaintiff's testimony and other evidence submitted by him in support of his Opposition to the extent that they are relevant to his claims. Given Plaintiff's *pro se* status, it would be an abuse of discretion to refuse to consider the remaining evidence offered by him at the summary judgment stage. *See Jones v. Blanas*, 393 F.3d 918, 935 (9th Cir. 2004) (reversing and remanding with instructions to consider evidence offered by the *pro se* plaintiff in his objections to the findings and recommendations.).

## III. LEGAL STANDARDS

A court may grant summary judgment when no genuine dispute as to any material fact exists such that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The party seeking summary judgment bears the initial burden of informing a court of the basis for its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate an absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is "material" if it might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49

(1986). A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Where the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim. *See Nissan Fire & Marine Ins. Co. v. Fritz Companies*, 210 F.3d 1099, 1102–03 (9th Cir. 2000).

If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." *Id.* But if the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine dispute as to any material fact actually exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party cannot "rest upon the mere allegations or denials of [its] pleading but must instead produce evidence that sets forth specific facts showing that there is a genuine issue for trial." *See Estate of Tucker*, 515 F.3d 1019, 1030 (9th Cir. 2008) (internal quotation marks and citation omitted).

In determining whether there are any genuine issues of material fact, the court must "view[] the evidence in the light most favorable to the nonmoving party." *Fontana v. Haskin*, 262 F.3d 871, 876 (9th Cir. 2001) (citation omitted).

/ / /
/ / /
/ / /
/ / /
/ / /

# IV. ARGUMENT

## A. Plaintiff Fails to Raise a Triable Issue that His Constitutional Rights Were Violated by the County's "No Narcotics Policy"

The Court first examines whether Plaintiff's Eighth Amendment or Fourteenth Amendment rights were violated by San Diego County and its purported "blanket" policy of denying narcotic medications to all detainees and inmates. *See* SAC at 3-7, 11.

To establish municipal liability under § 1983, a plaintiff must show that "a policy, practice, or custom of the entity" is "a moving force behind a violation of constitutional rights." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978); *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). In doing so, Plaintiff must establish "a direct causal link between municipal policy or custom and the alleged constitutional deprivation." *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1247 (9th Cir. 2016) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 386 (1989)). In other words, Plaintiff must show that the alleged unconstitutional act results from "(1) an employee [of the entity] acting pursuant to an expressly adopted official policy; (2) an employee acting pursuant to a longstanding practice or custom; or (3) an employee acting as a 'final policymaker.'" *Delia v. City of Rialto*, 621 F.3d 1069, 1081–82 (9th Cir. 2010) (quoting *Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir. 2003); *see Ulrich v. City & County of San Francisco*, 308 F.3d 968, 984–85 (9th Cir. 2002); *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992).

Here, the Court finds that the blanket "no narcotics" policy alleged by Plaintiff does not exist and, therefore, could not have caused Plaintiff to suffer a constitutional violation. In support of its motion for summary judgment, the County submitted its written pain medication policy to demonstrate that it is not a blanket policy denying narcotics to all detainees and inmates. *See* Def. County's Mem. of P. & A. Supp. Mot. for Summ. J. (hereafter "Def. County's P. & A."), ECF No. 146-1 at 13 (citing Ex. A, ECF No. 146-2, San Diego County Sheriff's Department Medical Services Division Policy and Procedure Manual P.10.)  The County's policy explicitly allows for the prescription of narcotic

medication to inmates for "chronic, non-cancer, pain if certain criteria are met." *Id*. The stated criteria are as follows: (1) pharmacy records within the past month confirming use of opioids with evidence of a consistent provider(s) authorizing the refills, (2) the consistent provider is a primary care physician, Federal Qualified Health Center, or any other medical or specialty clinic, (3) current medical records (30 days) from the community or prison setting substantiating the patient is currently being treated for chronic pain management, or (4) recent incarceration (within the last two months) in County Jail with records confirming the treatment of chronic pain while in custody. *See id.* For inmates who satisfy these criteria, County jail doctors retain the discretion to determine whether a narcotics prescription would be medically advisable for the inmates they treat. *See id.*

Although the County has stricter policies for inmates who have a history of prohibited drug behaviors, no County policy categorically denies drugs to inmates like Plaintiff. The County applies a "zero tolerance" to inmates caught in the act of cheeking, hoarding or selling opioids while in County custody: for such inmates, "prescribing of opioids will not be an option for pain management." *Id.* at 8. For inmates like Plaintiff who have a documented history of these behaviors during previous incarcerations but have not been caught in the act during the current incarceration, the County policy does not categorically prohibit narcotic medication but instead allows SDCJ physicians to retain the discretion to prescribe opioid or narcotic medication based on medical need. Specifically, the policy states that when an inmate is "identified as having a history of non-consumption cheeking, hoarding or selling" prescribed medication, the physician has the discretion to "consider and decide depending upon the [inmate's] clinical condition if any further treatment is needed." *Id.* at 11. The record before the Court indicates Plaintiff fell into the latter category of inmates. *See id.*, Ex. G, Pl.'s 2015 SDCJ inmate health records, ECF No. 146-2 at 88-93. Because he was not currently caught in the act of cheeking, hoarding, or selling opioids in October of 2018, but instead had a documented history from years prior, County policy allowed physicians to treat him with narcotics based on their medical judgment. *See id.*, Ex. B at 11.

Based on Defendants' evidence, the Court finds that Plaintiff was never subject to any County blanket policies that denied him narcotics. First, there was no written County policy that denied narcotics medication to all inmates across the board. Second, even for inmates with a history of problematic drug behaviors (i.e., cheeking, hoarding, or selling), like Plaintiff, the County policy allowed doctors to prescribe narcotics at their discretion. Plaintiff offers no admissible evidence to the contrary. Instead, he advances an alternate theory that the County applied an unwritten "no narcotics" policy to deny him medication. *See* Pl.'s Opp'n at 16. The Court therefore finds that Plaintiff has failed to raise a triable issue regarding the existence of a written "no narcotics" policy and turns to his argument concerning an unwritten policy.

Plaintiff has not established that any such "unwritten policy" or practice exists because he only identifies one incident, his own experience, to support his claim. In order for a municipality to be liable under *Monell,* an unwritten policy must be "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell*, 436 U.S. at 691 (citation omitted). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency, and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Plaintiff identifies no other incidents where inmates were denied narcotics medication as a result of the County's "no narcotics" unwritten policy. He bases his claim of an unwritten County policy solely on the single interaction he had with Dr. Leon. Because a single incident is insufficient to rise to the level of a "custom or usage," Plaintiff fails to raise a triable issue that the County is liable for an improper practice or custom under *Monell*. *See Monell*, 436 U.S. at 691.

For the above reasons, the Court finds that Plaintiff has failed to raise a triable issue that the County violated his constitutional rights because he has offered no admissible evidence to dispute the County's evidentiary showing that there is no written policy or

unwritten practice or custom denying narcotics to all.[3] Defendant County of San Diego is therefore entitled to summary judgment on Plaintiff's *Monell* claim against it.

### B.     Eighth Amendment Applies to Plaintiff's Claims Against Dr. Leon

Before turning to Plaintiff's claims that Dr. Leon violated his constitutional rights by failing to adequately treat his pain condition and skin infection, the Court must first determine whether the Eighth Amendment or Fourteenth Amendment applies to these claims.

"Inmates who sue prison officials for injuries suffered while in custody may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause or, if not yet convicted, under the Fourteenth Amendment's Due Process Clause." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1067–68 (9th Cir. 2016). The Ninth Circuit has held that a prisoner in "pre-hearing detention for a probate violation" is a "pre-trial detainee" entitled to Fourteenth Amendment rights. *Ressy v. King Cty.*, 520 F.App'x 554–55 (9th Cir. 2013). In contrast, an individual serving a flash incarceration sentence under California law is not in "prehearing detention." California Penal Code § 3453(q) (A person subject to post release community supervision "shall waive any right to a court hearing prior to the imposition of a period of 'flash incarceration' in a city or county jail of not more than 10 consecutive days for any violation of their post release supervision conditions.") Because flash incarceration detainees are not awaiting a judicial determination of whether they violated their release conditions, they are not pretrial detainees entitled to Fourteenth Amendment rights. *See Estate of Wilson by and through Jackson v. County of San Diego*, No. 3:20-cv-00457-BAS-DEB, 2022 WL 789127, at *15 (S.D. Cal. Mar. 14, 2022) (finding Eighth Amendment deliberate indifference standard applies to inmate held in "flash incarceration" in local custody pursuant to Cal. Penal Code § 3453(q)); *see also Flores v.*

---

[3] As Plaintiff is unable to raise a triable issue of material fact with regard to the first prong of a municipal liability claim, the existence of policy, custom or practice, the Court need not address the second prong which requires an analysis of whether the County was deliberately indifferent to Plaintiff's constitutional rights.

*Cty. of Fresno,* No. 1:19-cv-1477-DAD-BAM, 2020 WL 4339825, at * 3 (E.D. Cal. July 28, 2020) (finding Eighth Amendment deliberate indifference standard applied to inmate housed in county jail for parole violation); *Nordenstrom for Estate of Perry v. Corizon Health, Inc.*, No. 3:18-cv-1574-HZ, 2021 WL 2546275, at * 7 (D. Or. June 18, 2021).

Here, it appears that Plaintiff's claims against Dr. Leon are governed by the Eighth Amendment because they arose during his ten-day "flash incarceration" for violation of state post release supervision conditions. Plaintiff's "flash incarceration began on October 11, 2018." *See* SAC at 3. Plaintiff alleges that Dr. Leon failed to properly treat him during their visit on or around October 13, 2018, while the medical records submitted by Defendants indicate that this visit occurred on October 17, 2018. *Id.* at 8; *see also* Def. County's List of Evid., Ex. E, ECF No. 146-2 at 31. These medical records also show that Dr. Leon did not see Plaintiff again after that first examination,[4] *see* Def. County's Ex. E., ECF No. 146-2 at 24-70, and Plaintiff does not contend otherwise. The undisputed evidence, therefore, indicates Plaintiff's claims against Dr. Leon arose during his first and only visit with Dr. Leon which occurred sometime within his ten-day "flash incarceration" period for a supervised release violation. *See* Def. Leon's App'x of Ex., ECF No. 140-2, Ex. A. Pl.'s Deposition (hereafter "Pl.'s Dep.") at 24, 27, 73, 77. And, unlike the individual in *Ressy*, Plaintiff was not a pre-trial detainee during these ten days because he was serving his punishment for a violation rather than awaiting a court proceeding to determine whether his release conditions had been violated. *Ressy,* 520 F.App'x 554, *1. Accordingly, the

---

[4] Plaintiff was subsequently treated by Vicente Gatan on October 22, 2018. While initially named in Plaintiff's original Complaint as a defendant, the Court *sua sponte* dismissed the claims against this defendant on February 4, 2019. *See* ECF No. 3. As for Dr. O'Brien and Dr. Montgomery, Plaintiff made vague allegations against them but it does not appear that he was treated by either doctor. Regardless, both of these defendants were also later dismissed on March 25, 2021, and August 30, 2021, respectfully. *See* ECF Nos. 126, 138.

Court will apply Eighth Amendment standards to Plaintiff's claims against defendant Leon.[5]

### C. Plaintiff Fails to Raise a Triable Issue That His Eighth Amendment Rights Were Violated by Dr. Leon's Alleged Inadequate Medical Care

The Court next examines Plaintiff's arguments that Dr. Leon's failed to adequately treat his medical conditions and thus violated his Eighth Amendment rights.

In order to establish an Eighth Amendment violation, Plaintiff must first establish a "serious medical need by demonstrating that [the] failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted). Second, Plaintiff must show that the defendant's response to his objectively serious medical need was deliberately indifferent. *Id*. "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "To prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'" *Id.* at 1058 (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). "'Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights.'" *Id.* at 1057; *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) ("While poor medical treatment will at a certain point rise to the level of constitutional violation, mere malpractice, or even gross negligence, does not suffice."). *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989). While courts need not defer to the judgment of prison doctors, a mere "difference of opinion between a physician and the prisoner . . . concerning

---

[5] As stated above, in the February 10, 2020, Order, District Judge Curiel limited Plaintiffs claims against the County to October and November 2018. This span of time would include a portion of the time Plaintiff was likely a pre-trial detainee. However, because this Court has determined there was no *Monell* claim on the ground there is no triable issue on whether a policy existed, the Court need not address whether the claims against the County should be analyzed under the Eighth or Fourteenth Amendment.

what medical care is appropriate does not amount to deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)).

### 1. Plaintiff Fails to Raise a Triable Issue that his Constitutional Rights Were Violated by Dr. Leon's Refusal to Prescribe Narcotic Medication

Because no party disputes Plaintiff's medical needs are objectively serious, the Court next examines whether Dr. Leon was deliberately indifferent to these needs in his treatment decisions. Plaintiff argues that Dr. Leon denied his right to adequate medical care by refusing to prescribe him morphine, despite the fact that other doctors had treated his pain with narcotics in the past.

While it is undisputed that Plaintiff has a history of being treated with opioid medication, Plaintiff has not created a triable issue of fact that Dr. Leon's chose his alternative treatment plan in conscious disregard of a serious medical risk. The evidence indicates that Dr. Leon did not deliberately disregard Plaintiff's treatment history when he treated Plaintiff in October 2018. Dr. Leon examined Plaintiff only a few days after he began his flash incarceration. According to Dr. Leon's testimony, he did not know he had access to Plaintiff's prior physician or pharmacy records at the time he examined Plaintiff, and therefore did not review them prior to treating him. *See* Def. Leon's Mot. Summ. J., ECF No. 140-2, Ex. B, Leon Decl. ¶ 5.

Plaintiff argues that Dr. Leon "should have known" about his prior medical records because it was "his job to check." Pl.'s Opp'n at 4. Plaintiff, however, has not provided or pointed to any evidence that these records were actually available for Dr. Leon's review prior to treatment in October 2018. For example, while Plaintiff testified that he signed a release to obtain his medical records from Dr. Quian, he admits these records were not received by the SDCJ for "many months" after Plaintiff was initially incarcerated on October 11, 2018. Pl.'s Dep. at 44. Plaintiff also testified that although he signed a release shortly after incarceration with the County, he has no knowledge of when his pharmacy

records were actually received by SDCJ. *Id.* at 34. He also points to no evidence in the record that shows that Dr. Leon, treating him from SDCJ, had access to information about his treatment history in state prison. Moreover, even if Dr. Leon "should have known" of the existence of these records, gross negligence and recklessness are insufficient to establish deliberate indifference for an Eighth Amendment claim. *Wood*, 900 F.2d at 1334 (gross negligence); *see Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (recklessness).

Neither has Plaintiff submitted evidence to show that Dr. Leon's treatment of him was "medically unacceptable" under the circumstances. Per standard protocol, Dr. Leon reviewed the Jail Information Management System ("JIMS"), an electronic database of in-custody medical records, for information on Plaintiff prior to treating him. *See* Leon Decl. at ¶ 8. JIMS contained information that Plaintiff hoarded pain medications on at least two occasions in 2015 as well as other troubling behavior consistent with hoarding. Def.'s Ex. G, ECF No. 146-2 at 88-92. These records also indicate that Plaintiff was already on a standard nursing protocol for opioid withdrawal, which required taking daily vital signs and administration of Tylenol. *See id.* at 86. Dr. Leon himself did not notice any signs of withdrawal at the time of his examination. *See* Leon Decl. at ¶ 9. Based on the above, Dr. Leon concluded that Plaintiff's medical needs did not justify an opioid prescription and decided not to prescribe morphine as requested. *See id.* at ¶ 10. To further demonstrate that his treatment of Plaintiff met objective standards of medical care, Dr. Leon submitted the expert opinion of Dr. Paul Adler, Chief Executive Officer and Chief Medical Officer of Correctional Health Management. *See* Def. Leon's App'x of Exhibits, Ex. G, ECF No. 140-2, Expert Report (hereafter "Adler Rep."), at 121-130. In this report, Dr. Adler opined that even if Dr. Leon had received all of Plaintiff's prior medical records at the time he examined him, "prescribing [Plaintiff] with morphine [would have been] objectively contraindicated . . . due to his reported history of cheeking or hoarding medications." *Id.* at 129.

Plaintiff argues that Dr. Leon should have prescribed him narcotic medication because he did not, in fact, hoard drugs as indicated in the JIMS record. Pl.'s Opp'n at 3.

Plaintiff argues in his opposition that his only hoarding history involved an "asthma inhaler canister" that he "just didn't throw away when [he] got a new one." *Id.* at 5. Contrary to Plaintiff's statement, the medical records submitted by Defendants documents other instances where Plaintiff did, in fact, hoard or cheek opioids or other pain medications. *See* ECF No. 146-2 at 88-94. On February 4, 2015, a nurse observed Plaintiff's mouth and found that "MS Contin 15mg and Wellbutrin 150 mg were visible on the roof his mouth mix[ed] with poligrip." *Id.* at 89. On June 14, 2015, a deputy sheriff found "hoarded meds" in Plaintiff's cell, including pain relievers Tylenol 325 and Motrin. *Id.* at 90. In addition, on August 6, 2015, a nurse documented that Plaintiff already had "excessive meds prescribed" and his repeated requests for "even more" medication was a "red-flag indicating cheeking." *Id.* at 91. Moreover, even if the contents of the JIMS records were inaccurate, Plaintiff has not submitted any evidence that Dr. Leon's reliance on the content of those records was "medically unacceptable under the circumstances" or in "conscious disregard of an excessive risk to [Plaintiff's] health." *Togughi*, 391 F.3d at 1058 (citation omitted).

Plaintiff further argues that Dr. Leon should have treated his withdrawal with suboxone but provides no evidence that failure to do so constituted "medically unacceptable" treatment. *See id.* Defendants provided expert testimony that Plaintiff was administered the "national standard withdrawal protocol," which included "Compazine for nausea, Imodium for diarrhea, and Tylenol as an anti-inflammatory agent as well as a pain medication." Adler Rep. at 127. Plaintiff offers no evidence regarding the insufficiency of this treatment plan and his difference of opinion on how he should have been treated is not sufficient to establish deliberate indifference. *Snow*, 681 F.3d at 987. Plaintiff, therefore, fails to raise a triable issue that Dr. Leon's failure to treat him with suboxone, instead of the standard withdrawal protocol, was deliberately indifferent to his medical needs.

In conclusion, Plaintiff does not raise a triable issue of fact that Dr. Leon was deliberately indifferent to Plaintiff's serious medical needs by denying him narcotic medication.

### 2. *Plaintiff Fails to Raise a Triable Issue that his Constitutional Rights Were Violated by Dr. Leon's Failure to Treat his MRSA Infection*

The Court next examines whether Dr. Leon was deliberately indifferent to Plaintiff's serious medical needs by refusing to treat the MRSA infection on his ankle.

Plaintiff offers no evidence to support a finding that Dr. Leon's treatment of his ankle fell below the applicable standard of care. After examining Plaintiff, Dr. Leon diagnosed him with cellulitis and prescribed Bactrim, a medication that can be used to treat both cellulitis and MRSA. *See* Leon Decl. at ¶ 10; *see also* ECF No. 140-2 at 94, Ex. C. According to expert testimony provided by Defendants, Bactrim is not only a treatment that meets the standard of care for cellulitis but is also the "first line drug for MRSA skin infections." Adler Rep. at 125.

Plaintiff offers no evidence to dispute the adequacy of Dr. Leon's decision to treat him with Bactrim but contends instead that Dr. Leon should have switched his medication after Plaintiff developed an allergic reaction. *See* Pl.'s Dep. at 39. After being treated by Dr. Leon on October 17, 2018, Plaintiff filed a "Request for Health Services" on October 27, 2018, claiming he "still has MRSA and antibiotics ran out." ECF No. 140-2 at 78. There is no evidence in the record, however, that he informed Dr. Leon of his allergic reaction or had any further interaction with Dr. Leon after their first and only visit. *See* 146-2, Ex. E. As Dr. Adler explains in his expert report, because jail physicians operate more as an "urgent care" rather than a "family practice," inmates see different doctors each time they seek care based on availability. Adler Rep. at 126. Plaintiff submits no evidence that Dr. Leon had the opportunity or the responsibility to adjust the medication for his ankle infection. He, therefore, fails to raise a triable issue that Dr. Leon was deliberately indifferent by failing to do so.

For the above reasons, Plaintiff has failed raise a triable issue that Dr. Leon's treatment of him was medically unacceptable under the circumstances or evinced a conscious disregard of his serious medical needs. *See Toguchi*, 391 F.3d at 1058; *Jackson*,

90 F.3d at 332. The Court, therefore, grants Defendant Leon's motion for summary judgment.

## V. CONCLUSION

For all the reasons discussed, the Court **GRANTS** Defendants' Motions for Summary Judgment pursuant to Fed. R. Civ. P. 56 (ECF Nos. 140 and 146) and **DIRECTS** the Clerk of the Court to enter a final judgment in favor of Defendants on all claims and to close the file.

**IT IS SO ORDERED**.

Dated: September 9, 2022

Honorable Jinsook Ohta
United States District Judge